

**Date Signed:**
**December 28, 2020**

SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| In re: | Chapter 11 |
| PANIOLO CABLE COMPANY, LLC, | Case No. 18-01319 (RJF) |
| Debtor. | <u>Hearing</u>:<br>Date: December 21, 2020<br>Time: 2:00 p.m.<br>Judge: Hon. Robert J. Faris |

**ORDER (A) AUTHORIZING AND APPROVING THE SALE OF THE
DEBTOR'S ASSETS FREE AND CLEAR OF ALL LIENS, CLAIMS,
INTERESTS, AND ENCUMBRANCES, (B) APPROVING THE ASSET
PURCHASE AGREEMENT, (C) APPROVING THE ASSUMPTION AND
ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS AND
UNEXPIRED LEASES IN CONNECTION WITH THE SALE,
(D) APPROVING THE OPERATIONAL SUPPORT AND SALES SERVICES
AGREEMENT, (E) APPROVING A BREAK-UP FEE, AND
<u>(F) GRANTING RELATED RELIEF; EXHIBITS "A" AND "B"</u>**

i.      Following that certain Chapter 11 Involuntary Petition dated as of November 13, 2018, against Paniolo Cable Company, LLC (the above-captioned debtor and debtor-in-possession (collectively, the "<u>Debtor</u>")), on November 29, 2018, certain creditors of the Debtor filed a motion for entry of an order appointing a Chapter

- 1 -

11 trustee.  This Court subsequently issued an order, dated February 11, 2019, approving the appointment of Michael Katzenstein, as Chapter 11 Trustee (the "Trustee") of the Debtor.

ii.       In connection with that certain Adversary Proceeding No. 19-90022, *Katzenstein Trustee v. Sandwich Isles Communications, Inc.*, on March 4, 2020, certain assets and rights of the Transferred Equipment and Property Rights were marshalled, sold and otherwise transferred from Sandwich Isles Communications, Inc. ("SIC") to Debtor, free and clear of any continuing right, title, lien or encumbrance on the part of SIC or anyone claiming by and through SIC (the "US Marshal Sale") (excluding, for the avoidance of doubt, any pre-existing liens by the United States or any lien on the proceeds of any sale of assets), which US Marshal Sale was confirmed by this Court on March 16, 2020.

iii.      Pursuant to this Court's order dated June 4, 2020, this Court, inter alia, approved that certain Settlement Agreement ("Settlement Agreement"), effective as of March 26, 2020, by and among the Paniolo Creditors, Paniolo Trustee, Ownership, SIC, and SIC Affiliates (each as defined therein) pursuant to Federal Rule of Bankruptcy Procedure 9019. As more fully set forth in the Settlement Agreement, the Settlement Parties made certain representations and warranties (the "Settlement Agreement Representations") and covenants (the "Settlement Agreement Covenants") which included, among other things, the duty to cooperate further with the Debtor with

- 2 -

respect to the US Marshal Sale, the transfer of the Assets and rights transferred therein, and any proposed sale by Debtor to Buyer herein. Pursuant to the Settlement Agreement, all right title and interest of SIC, SIC Affiliates, or any person claiming by or through SIC or SIC Affiliates in Debtor's assets, including those transferred as part of the US Marshal Sale, were terminated.

iv.        In connection with the Settlement Agreement, Debtor and SIC entered into that certain Master Relationship Agreement and its Schedules and Exhibits, as of March 6, 2020, the (collectively, the "MRA"), pursuant to which the Debtor and SIC rearranged their business affairs among themselves.

v.        Upon consideration of the motion (the "Motion")[1] of the Trustee, dated November 30, 2020 for the entry of an order (this "Sale Order") (a) authorizing and approving the sale (the "Sale") of certain of the Debtor Assets, including the Schedule A.1 Assets, Schedule A.2 Assets, Assigned Claims, Assigned Contracts (each as defined in the APA and, collectively, the "Purchased Assets") and the transfer of the Incidental Rights, including the Assigned Rights and Assigned Permits (each as defined in the APA, and together with the Purchased Assets, the "Transferred Assets") and assumption of the Assumed Liabilities, but excluding the Excluded Assets and Excluded Liabilities, all as more fully set forth in the Asset Purchase Agreement

---

[1] Capitalized terms used but not otherwise defined herein are to be given the meanings ascribed to them in the Motion, the Bidding Procedures Order, or the APA, as applicable.

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed   12/28/20   Page 3 of 48

attached hereto as **Exhibit A** (the "APA"), dated as of November 30, 2020, 2020 between the Trustee, as seller (the "Seller") and Hawaiian Telecom, Inc., a Hawaii corporation, as buyer ("HTI" or the "Buyer"), free and clear of all liens, claims, interests and encumbrances, except the Permitted Liens and those expressly to be assumed by the Buyer under the APA; (b) approving the APA; (c) approving the Debtor's assumption and assignment of certain executory contracts and unexpired leases to the Buyer; (d) approving the Operational Support and Sales Services Agreement attached hereto as **Exhibit B** (the "Services Agreement"); (e) approving a Break-Up Fee in the event that the Court approves a higher and better Acquisition Proposal; and (f) granting related relief; and this Court having entered an *Order (I) Approving Bid and Auction Procedures, Including Stalking Horse Protections; (II) Authorizing and Scheduling an Auction for the Sale of Assets; (III) Approving the Sale of Assets; and (IV) Granting Related Relief* Docket No. 222, as extended by Docket No. 270 (the "Bidding Procedures Order"); and the Trustee having determined that the highest or otherwise best offer for the Transferred Assets was made by the Buyer pursuant to the APA; and this Court having conducted a hearing on December 21, 2020 (the "Sale Hearing"), at which time all parties in interest were provided an opportunity to be heard with respect to the Motion and to consider the approval of the Sale pursuant to the terms and conditions of the APA and the granting of all other relief sought in the Motion, and this Court having jurisdiction to consider the Motion

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed   12/28/20   Page 4 of 48

and the relief requested therein in accordance with 28 U.S.C. §§ 157 and 1334, the Motion being a core proceeding in accordance with 28 U.S.C. § 157(b); and venue of this case being proper in this District pursuant to 28 U.S.C. §§ 1408 and 1409; the Statement [Dkt. no. 336] of the Office of the United States Trustee, the Objection [Dkt. no. 347] of the United States on behalf of the RUS (which was withdrawn at the Sale Hearing), the Statement [Dkt. no. 341] of the Department of Hawaiian Home Lands of Hawaii, and the Statement of Concerns [Dkt. no. 348] of SIC having been filed in response to the Motion; and the Court having considered (i) the Motion and the declarations and exhibit attached hereto; (ii) the arguments of counsel made, and evidence adduced, related thereto; (iii) the record of the Sale Hearing; and (iv) all filings of record in this case; all parties in interest having been heard, or having had the opportunity to be heard, regarding the approval of the APA, the Sale, and the other transactions contemplated by the APA; and it appearing that the relief requested in the Motion is in the best interests of the Debtor, its estate, its creditors, and other parties-in-interest; and this Court having found that notice of the Motion has been given as set forth in the Motion and that such notice is adequate and no other or further notice need be given; and it further appearing that the legal and factual bases set forth in the Motion and at the Sale Hearing establish just cause for the relief granted herein; and after due deliberation and sufficient cause appearing therefor,

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed 12/28/20   Page 5 of 48

**IT IS HEREBY FOUND AND DETERMINED THAT**:[2]

## Statutory Predicates; Final Order

A.     The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this Chapter 11 Case pursuant to Bankruptcy Rule 9014.

B.     This Court has jurisdiction over the Motion pursuant to 28 U.S.C. §§ 157 and 1334(b).  This is a core proceeding under 28 U.S.C. § 157(b) and this Court may enter a final order consistent with Article III of the United States Constitution.  Venue of this Chapter 11 Case and the Motion in this district is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

C.     The statutory bases of the relief requested in the Motion are sections 105, 363, 365, 503, 506 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, 6006, 9007 and 9014 and Local Bankruptcy Rules 6004-1 and 9013-1.

D.     The Sale Order constitutes a final order within the meaning of 28 U.S.C. § 158(a).  Notwithstanding Bankruptcy Rules 6004(h), 6006(d), and 7062, and to the extent necessary under Bankruptcy Rule 9014 and Rule 54(b) of the Federal Rules of Civil Procedure, as made applicable by Bankruptcy Rule 7054, this Court

---

[2] The findings and conclusions set forth herein constitute this Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.  To the extent that any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent any of the following conclusions of law constitute findings of fact, they are adopted as such.

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed  12/28/20   Page 6 of 48

expressly finds that there is no just reason for delay in the implementation of the Sale Order and expressly directs entry of the Sale Order as set forth herein which shall not be subject to any stay.

## Notice

E. This Court previously entered the Bidding Procedures Order approving, among other things, the Bidding Procedures, the proposed bid protections to a Stalking Horse Bidder, and the Assumption and Assignment Procedures (as defined in the Bidding Procedures Order).

F. As evidenced by the certificates of service previously filed with this Court [Docket Nos. 324, 325, 326, 327, 330, 331 and 360], demonstrated by the evidence presented at, and based on the representations of counsel at the Sale Hearing, due, proper, timely, adequate, and sufficient notice of the Motion, the Sale Hearing, the Sale, and the Assumption and Assignment Procedures has been provided in accordance with sections 102(1), 363, and 365 of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, 6006, 9007, and 9014 and in compliance with the Bidding Procedures Order, to each party entitled to such notice, including, as applicable: (a) all parties that have been identified by the Trustee in good faith prior to entry of the Bidding Procedures Order as having the interest and ability to acquire all or part of the Transferred Assets; (b) all entities known to have any right, authority over, lien, claim or encumbrance in or upon any of the Transferred Assets,

- 7 -

including without limitation the United States of America, or who may otherwise deprive Seller from transferring title to or Buyer from enjoying all rights to any of the Transferred Assets; (c) any entity to whom a duty is or may be owed, which may be a liability extinguished by the Sale Order; (d) all state, local and other governmental taxing authorities in the states in which the Trustee has tax liabilities, or for which taxing liability for the Transferred Assets may be established; (e) known counterparties to any unexpired leases or executory contracts that could potentially be assumed and assigned to the Buyer; (f) the Office of the United States Trustee; (g) the Internal Revenue Service; (h) the Securities & Exchange Commission; (i) the Office of the Attorney General for the State of Hawaii; (j) the U.S. Department of Agriculture's Rural Utilities Service ("RUS"); (k) SIC; (l) the Department of Hawaiian Home Lands; (m) State of Hawaii Land Use Commission; (n) State of Hawaii Department of Land and Natural Resources; (o) the Delaware Department of State; and (p) all other persons and entities that have filed a request for service of filings in this Chapter 11 Case pursuant to Bankruptcy Rule 2002 (collectively, the "Sale Notice Parties"). The notices described above, in the Motion, and Bidding Procedures Order were good, sufficient, and appropriate under the circumstances, and reasonably calculated to reach and apprise all known and unknown holders of rights, authority over, liens, claims, or encumbrances on the Transferred Assets, and rights which are or may constitute liabilities extinguished

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed   12/28/20   Page 8 of 48

by this Order, and no other or further notice of the Motion, the Sale, the Sale Hearing, the potential assumption and assignment of the Designated Contracts (as defined below) is, or shall be, required.

G.    The notice provided of the Bidding Procedures, the Motion and the Sale Hearing provided all interested parties with timely and proper notice of the Sale, the Bid Deadline and the Sale Hearing.  Further, a reasonable opportunity to object to and to be heard regarding the relief granted by the Sale Order has been afforded to parties entitled to notice pursuant to Bankruptcy Rule 6004(a).

H.    In accordance with the Bidding Procedures Order, and as evidenced by the certificates of service previously filed with this Court [Docket No. 274, 330], the Trustee filed and has served the *Notice of Executory Contracts and Unexpired Leases that May Be Assumed and Assigned in Connection with the Sale of the Debtor's Assets and the Proposed Cure Cost with Respect Thereto* [Docket No. 273] (the "Cure Notice") regarding the potential assumption and assignment of certain Contracts (as defined in the Cure Notice) and of the amount necessary to cure any defaults pursuant to section 365(b) of the Bankruptcy Code (all such amounts in connection with any Contract, the "Cure Amounts") upon the non-Debtor counterparties (each a "Non-Debtor Counterparty" and collectively, the "Non-Debtor Counterparties") to the Contracts.  The service and provision of the Cure Notice was good, sufficient, and appropriate under the circumstances and no further

- 9 -

notice need be given in respect of assumption and assignment of certain contracts designated by the Buyer pursuant to the APA or subsequently entered into by Debtor after the date of this Sale Order (each an "Assumable Contract" and to the extent so designated by Buyer pursuant to the APA, the "Designated Contracts"), including with respect to adequate assurance of future performance or establishing a Cure Amount for the respective Contracts. All Non-Debtor Counterparties to each Assumable Contract set forth in the Cure Notice have had an adequate opportunity to object to assumption and assignment of the applicable Assumable Contract and the Cure Amount set forth in the Cure Notice (including objections related to the adequate assurance of future performance and objections based on whether applicable law excuses the Non-Debtor Counterparty from accepting performance by, or rendering performance to, the Buyer for purposes of section 365(c)(1) of the Bankruptcy Code). The deadline (the "Cure/Assignment Objection Deadline") to file an objection to the Cure Amount set forth in the Cure Notice and the assumption and assignment to the Buyer of any Assumable Contract (collectively, a "Cure/Assignment Objection") has expired, and to the extent any such entity timely filed a Cure/Assignment Objection, all such objections have been resolved, withdrawn or overruled. To the extent that any such party did not timely file a Cure/Assignment Objection by the Cure/Assignment Objection Deadline, such party shall be deemed to have consented to (i) the assumption and assignment of the

- 10 -

Assumable Contract, and (ii) the amount set forth in the Cure Notice shall be deemed the Cure Amount necessary to "cure" all "defaults", each within the meaning of section 365(b) of the Bankruptcy Code.

I.      On April 22, 2020, the Trustee filed *Michael Katzenstein, as Chapter 11 Trustee's Motion for Order Extending Bid and Auction Procedure Deadlines for the Sale of Substantially All of Debtor's Assets* [Docket No. 245]. On June 3, 2020, the Bidding Procedures were extended and modified by the Court's *Order Granting Michael Katzenstein, as Chapter 11 Trustee's Motion for Order Extending Bid and Auction Procedure Deadlines for the Sale of Substantially All of Debtor's Assets* [Docket No. 270] (the "Extension Order"). The Extension Order also established July 13, 2020, as the Bid Deadline for the submission of bids by Potential Bidders and July 31, 2020, as the date on which the Auction would take place if more than one Qualified Bid was received with regard to the Transferred Assets. After the expiration of the Bid Deadline, the Debtor did not receive any Qualified Bids.

J.      The Court hereby finds that the Trustee has complied with the notice provision of Section 16.3 of the MRA.

K.      No further or other notice beyond that described in the foregoing Paragraphs E through J is or shall be required in connection with the relief granted in the Sale Order.

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed 12/28/20   Page 11 of 48

## Highest or Otherwise Best Offer and Sound Business Purpose

L.     The Trustee conducted the sale process in accordance with, and has otherwise complied in all respects with, the Bidding Procedures Order, as modified by the Extension Order and the terms of the Sale Order. The Purchased Assets were adequately marketed by the Trustee and his advisors, and the sale process set forth in the Bidding Procedures Order, and otherwise conducted by the Trustee, afforded a full, fair, and reasonable opportunity for any person or entity to make an offer to purchase the Purchased Assets. The Bidding Procedures set forth in the Bidding Procedures Order were non-collusive, proposed and executed in good faith as a result of arms' length negotiations, and were substantively and procedurally fair to all parties.

M.     In marketing the Purchased Assets, the Trustee negotiated allocations of the Purchase Price among the Purchased Assets in order to establish the highest and best offer for each.

N.     Throughout this case, the Trustee, on behalf of the bankruptcy estate, the creditors, and the Buyer have recognized the public importance of maintaining connectivity for certain telecommunications services to the Hawaiian Home Lands. Consistent with FCC regulations and Buyer's status as an incumbent local exchange carrier in Hawaii, the Purchased Assets will continue to be available to

- 12 -

telecommunications service providers that provide retail communications services on the Hawaiian Homelands, on a non-discriminatory basis.

O.    The terms contained in the APA constitute the highest and best offer for the Transferred Assets, including the allocation among the Purchased Assets, and provide fair and reasonable consideration to the Debtor's estate for the Transferred Assets and the assumption of the Assumed Liabilities and Permitted Liens, and the consideration provided by the Buyer under the APA constitutes reasonably equivalent value for each of the Purchased Assets under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.  The Trustee's determination, in consultation with its advisors, that the consideration provided by the Buyer under the APA constitutes the highest or otherwise best offer for the Transferred Assets constitutes a valid and sound exercise of the Trustee's business judgment.

P.    Approval of the Motion and the APA, the consummation of the Sale contemplated thereby, entry into the Services Agreement, and entry into the Transaction Documents, are in the best interests of the Debtor, its creditors, its estate, and all parties-in-interest.  The Trustee has demonstrated compelling circumstances and good, sufficient, and sound business reasons and justifications for entering into the APA, the Services Agreement and the Transaction Documents, and the performance of the Debtor's obligations under the APA and the Services Agreement,

- 13 -

and the granting of the Motion because, among other reasons: (a) the APA constitutes the highest or otherwise best offer for the Transferred Assets; (b) the APA and the Closing (as defined in the APA) thereon will present the best opportunity to realize the value of the Transferred Assets; (c) any other available transaction would not have yielded as favorable an economic result; (d) entry into the Services Agreement, and management by the Buyer, an experienced telecommunications network operator, represents the best opportunity to preserve the value of the Transferred Assets until the Closing of the Sale, and the best certainty to reach Closing; and (e) the public interest is served in that consistent with FCC regulations and its status as an incumbent local exchange carrier in Hawaii, the Purchaser will continue to make available the Purchased Assets to telecommunications service providers that provide retail communications services on the Hawaiian Homelands, on a non-discriminatory basis.

Q. Entry of the Sale Order and the approval of the APA, the Services Agreement and the Transaction Documents and all of the provisions thereof is a condition precedent to the Buyer's consummation of the Sale.

R. The Buyer is the highest and best bidder for the Transferred Assets. The Buyer has complied in all respects with the Bidding Procedures Order and any other applicable order of this Court in negotiating and entering into the APA, and

the Sale and the APA likewise comply with the Bidding Procedures Order and any other applicable order of this Court.

## Sale and Transfer Free and Clear of Interests or Claims

S.      The conditions of section 363(f) of the Bankruptcy Code have been satisfied and, upon entry of the Sale Order, other than Assumed Liabilities and Permitted Liens, subject to this Sale Order and the terms and conditions of the APA, the Trustee is authorized to transfer all of the Debtor's right, title and interest to the Transferred Assets free and clear of (i) any and all liens, encumbrances, claims, mortgages, restrictions, hypothecations, charges, instruments, collective bargaining agreements, leases or subleases, licenses, options, deeds of trust, security interests, other interests, conditional sale or other title retention agreements, pledges, other liens (including mechanic's, materialman's, possessory and other consensual and non-consensual liens and statutory liens), judgments, demands, encumbrances, easements, servitudes, rights-of-way, encroachments, restrictive covenants, restrictions on transferability or other similar restrictions, rights of first refusal, offsets, contracts, recoupment, rights of recovery, rights of use or possession, liability for unpaid sales, use, franchise, excise, or any other taxes, liability for unpaid federal or state universal service contributions, liability for any unpaid regulatory fees, assessments, contributions or other payments assessed by or otherwise owed to the FCC, any state commission or other governmental entity, and

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed  12/28/20   Page 15 of 48

charges of any kind or nature, if any, including any restriction on the use, voting, transfer, receipt of income or other exercise of any attributes of ownership, (ii) all claims as defined in Bankruptcy Code section 101(5), including all rights or causes of action (whether in law or equity), proceedings, warranties, guarantees, indemnities, rights of recovery, setoff, recoupment, obligations, demands, restrictions, or liabilities relating to any act or omission of the Debtor, SIC, or any other person prior to the Closing, claims for reimbursement, contribution, indemnity, exoneration, products liability, alter-ego, releases into the surface waters, ground waters, soil, subsurface strata and ambient air (collectively, the "Environment") of any substance, chemical, material, or waste now or in the future defined as a "hazardous substance," "hazardous material," "hazardous waste," "toxic substance," "toxic pollutant," "regulated substance," "contaminant," or "pollutant" (or words of similar import) within the meaning of or regulated or addressed under any federal, state, local or foreign statute, law, ordinance, regulation, rule, code, order, consent decree or judgment relating to pollution or protection of the Environment (each an "Environmental Law"), any environmental claim or environmental notice, or taxes, assessments or imposts of any kind, decrees of any court or foreign or domestic governmental entity, consent rights, options, contract rights, covenants, indentures, loan agreements, and interests of any kind or nature whatsoever (known or unknown, matured or unmatured, accrued, or contingent and regardless of whether currently

exercisable), whether arising prior to or subsequent to the commencement of the above-captioned cases, and whether imposed by agreement, understanding, law, equity or otherwise, (iii) all debts, liabilities, obligations, contractual rights and claims, labor, employment and pension claims, and debts arising in any way in connection with any agreements, acts, or failures to act, including any pension liabilities, retiree medical benefit liabilities, liabilities arising under or related to the Internal Revenue Code, of the Debtor, SIC, SIC's Affiliates or any of the Debtor's, SIC's, or SIC's Affiliates, or SIC's predecessors or affiliates, claims, and (iv) the Excluded Liabilities as set forth in the APA, in each case with respect to items (i), (ii), (iii) and (iv), whether known or unknown, choate or inchoate, filed or unfiled, scheduled or unscheduled, noticed or unnoticed, recorded or unrecorded, perfected or unperfected, allowed or disallowed, contingent or non-contingent, liquidated or unliquidated, matured or unmatured, material or non-material, disputed or undisputed, whether arising prior to or subsequent to the commencement of this Chapter 11 Case, and whether imposed by agreement, understanding, law, equity or otherwise, including claims otherwise arising under doctrines of successor liability ((i), (ii), (iii) and (iv) collectively, the "Interests or Claims").  The Buyer would not have entered into the APA if the transfer of the Transferred Assets was not free and clear of all Interests or Claims as set forth in the APA and the Sale Order, or if in the future the Buyer would or could be liable for any such Interests or Claims.

- 17 -

T.     Upon entry of the Sale Order, the Trustee is authorized to transfer all of the Debtor's right, title and interest in and to the Transferred Assets free and clear of all Interests or Claims (except as otherwise expressly assumed in, or permitted by, the APA or the Sale Order) because one or more of the provisions set forth in section 363(f)(1)-(5) of the Bankruptcy Code has been satisfied, including that, except as otherwise expressly provided in the APA or the Sale Order, such Interests or Claims shall attach to the proceeds of the Sale in the order of their priority, with the same validity, force and effect which they now have against those particular Transferred Assets subject to such Interests or Claims, and subject to any claims and defenses the Debtor and the Trustee may possess with respect to such Interests or Claims.  Each entity with an Interest or Claim (other than an Assumed Liability or Permitted Lien) that is attached to the Transferred Assets to be transferred on the Closing Date:   (i) has, subject to the terms and conditions of the Sale Order, consented to the Sale or is deemed to have consented to the Sale; (ii) could be compelled in a legal or equitable proceeding to accept money satisfaction of such encumbrance; or (iii) otherwise falls within the provisions of section 363(f) of the Bankruptcy Code.  Those holders of Interests or Claims against the Transferred Assets who did not object or who withdrew their objections to the APA or the Motion are deemed to have consented to the transactions contemplated thereby pursuant to section 363(f)(2) of the Bankruptcy Code.  For the avoidance of doubt, nothing in

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed   12/28/20   Page 18 of 48

this Sale Order establishes any rights or interests in the Transferred Assets (other than the Debtor's rights and interests in such Transferred Assets and the Buyer's rights and interests in the Transferred Assets from and after the Closing), and nothing herein shall be construed to govern or affect the distributions of the cash proceeds, if any, from the Sale of the Transferred Assets.[3]

U.    A sale of the Transferred Assets other than one free and clear of all Interests or Claims, and without entry of the Services Agreement, would yield substantially less value for the Debtor's estate, with less certainty, than the Sale as contemplated.  Therefore, the Sale contemplated by the APA and approved herein free and clear of all Interests or Claims, except for the Assumed Liabilities and Permitted Liens, and entry of the Services Agreement is in the best interests of the Debtor, its estate and creditors, and all other parties-in-interest.

### Assumption and Assignment of the Designated Contracts

V.    The Assumption and Assignment Procedures set forth in the Bidding Procedures Order are adequate, sufficient and appropriate under the circumstances.

W.    The assumption and assignment of the Designated Contracts pursuant to the Assumption and Assignment Procedures and the APA is in the best interests of the Debtor and its estate and represents the reasonable exercise of the Trustee's

---

[3] The Trustee intends to use the proceeds from the Sale to repay the amounts due to the Debtor's post-petition lender, HSBC Bank USA, National Association under the Senior Secured Superpriority Chapter 11 Debtor Credit Agreement, as amended.

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed   12/28/20   Page 19 of 48

sound business judgment.  The Designated Contracts being assigned to the Buyer are an integral part of the Transferred Assets being purchased by the Buyer, and, accordingly, such assumption and assignment of the Designated Contracts and the liabilities associated therewith are reasonable and enhance the value of the Debtor's estate.

X.    The Debtor has met all requirements of section 365(b) of the Bankruptcy Code for each of the Designated Contracts.  The Debtor or the Buyer will have (i) cured or provided adequate assurance of cure of any default existing prior to the consummation of the Sale pursuant to the APA under all of the Designated Contracts, within the meaning of section 365(b)(1)(A) of the Bankruptcy Code and (ii) provided compensation or adequate assurance of compensation to any counterparty to Designed Contract for actual pecuniary loss to such entity resulting from a default prior to the Closing under any of the Designated Contracts, within the meaning of section 365(b)(1)(B) of the Bankruptcy Code.  The proposed Cure Amounts set forth on the Cure Notices or any other cure amount reached by agreement after any Cure/Assignment Objection are deemed the amounts necessary to "cure" all "defaults," each within the meaning of Bankruptcy Code section 365(b), under each Designated Contract.  The assignment of the Designated Contracts is free and clear of all Interests or Claims (other than Assumed Liabilities and Permitted Liens).  No section of any of the Designated Contracts that would prohibit, restrict,

- 20 -

or condition, whether directly or indirectly, the use, assumption, or assignment of any of the Designated Contracts in connection with the Sale shall have any force or effect, except as expressly permitted in the APA and the Sale Order.

Y. The Buyer has demonstrated adequate assurance of future performance under the relevant Designated Contracts within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code. The Buyer's promise to perform the obligations under the Designated Contracts arising after the Closing shall constitute adequate assurance of its future performance of and under the Designated Contracts, within the meaning of Bankruptcy Code sections 365(b)(1) and 365(f)(2). Pursuant to section 365(f) of the Bankruptcy Code, the Designated Contracts to be assumed and assigned under the APA shall be assigned and transferred to, and remain in full force and effect for the benefit of, the Buyer notwithstanding any provision in such contracts or other restrictions prohibiting their assignment or transfer.

Z. No defaults exist in the Debtor's performance under any of the Designated Contracts as of the date of the Sale Order other than the failure to pay amounts equal to the Cure Amounts or defaults that are not required to be cured as contemplated in section 365(b)(1)(A) of the Bankruptcy Code. Any Cure/Assignment Objection that was heard at the Sale Hearing (to the extent not withdrawn), was considered by this Court, and is overruled on the merits with prejudice. This Court finds that, with respect to all Assumable Contracts, the

payment of the proposed Cure Amounts in accordance with the terms of the APA is appropriate and is deemed to fully satisfy the Debtor's obligations under section 365(b) of the Bankruptcy Code. Accordingly, all of the requirements of section 365(b) of the Bankruptcy Code have been satisfied for the assumption and the assignment by the Debtor to the Buyer of each of the Designated Contracts. To the extent any Assumable Contract is not an executory contract within the meaning of section 365 of the Bankruptcy Code, it shall be transferred to the Buyer in accordance with the terms of the Sale Order that are applicable to the Transferred Assets.

### Good Faith Finding

AA.    The Buyer is not an "insider" or "affiliate" of the Debtor as those terms are defined in section 101 of the Bankruptcy Code.

BB.    The APA, including the Purchase Price and allocation among the Purchased Assets, was negotiated, proposed and entered into by the Debtor and the Buyer without collusion or fraud, in good faith and from arm's-length bargaining positions.

CC.    The APA and the transactions contemplated thereby cannot be avoided under section 363(n) of the Bankruptcy Code. The Trustee and the Buyer and Buyer's agents, representatives and affiliates have not engaged in any conduct that would cause or permit the APA or the consummation of the transactions

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed   12/28/20   Page 22 of 48

contemplated thereby to be avoided, or costs or damages to be imposed, under section 363(n) of the Bankruptcy Code. The Trustee and its professionals marketed the Purchased Assets and conducted the marketing and sale process in substantial compliance with the Bidding Procedures Order.

DD. The Buyer is a good-faith purchaser under section 363(m) of the Bankruptcy Code and, as such, is entitled to all of the protections afforded thereby. In particular, (a) the Buyer recognized that the Trustee was free to deal with any other party interested in purchasing the Transferred Assets subject to the terms of the APA; (b) the Buyer in no way induced or caused the chapter 11 filing; (c) the Buyer has not violated section 363(n) of the Bankruptcy Code by any action or inaction; (d) no common identity of directors, officers, or controlling stakeholders exists between the Buyer and any of the Debtor; (e) all payments to be made by the Buyer and other agreements or arrangements entered into by the Buyer in connection with the Sale have been disclosed; and (f) the Buyer has not acted in a collusive manner with any person.

### No Fraudulent Transfer or Successor Liability

EE. The aggregate consideration from the Buyer for the Purchased Assets and the allocated consideration among the Purchased Asserts as set forth in the APA: (a) as such consideration relates to the Purchased Assets, constitutes fair consideration and fair value under the Bankruptcy Code, the Uniform Fraudulent

- 23 -

Transfer Act, the Uniform Fraudulent Conveyance Act and other similar state laws or laws of the United States; (b) is the best value obtainable for the Purchased Assets; (c) will provide a greater recovery to creditors than would be provided by any other available alternative; and (d) as such consideration relates to the Purchased Assets, constitutes reasonably equivalent value and fair consideration (as those terms are defined in the Uniform Fraudulent Transfer Act, Uniform Fraudulent Conveyance Act, section 548 of the Bankruptcy Code, and the laws of the United States; any state, tribe, territory, or possession of the United States; and the District of Columbia, as applicable).

FF.     Neither the Trustee, the Debtor nor Buyer entered into or has agreed to enter into the APA with any fraudulent or otherwise improper purpose, including, without limitation, the purpose of hindering, delaying or defrauding any creditors of the Debtor.

GG.    The transfer of the Transferred Assets, including the Assumed Liabilities and the Permitted Liens, by the Buyer, except as otherwise set forth in the APA, does not, and will not, subject the Buyer to any liability whatsoever, with respect to the operation of the Debtor's business prior to the Closing or by reason of such transfer under the laws of the United States, any state, territory, or possession thereof, or the District of Columbia, based, in whole or in part, directly or indirectly, in any theory of law or equity including, without limitation, any laws affecting

- 24 -

antitrust, successor, transferee or vicarious liability.  Pursuant to the APA, the Buyer is not purchasing all of the Debtor Assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities or any contract that is not included as a Designated Contract, and the Buyer is not holding itself out to the public as a continuation of the Debtor or related to SIC or any of SIC's Affiliates. The Buyer is not a mere continuation of or successor to the Debtor, SIC or any of SIC's Affiliates, or Debtor's estate in any respect.  The APA does not amount to a consolidation, merger or *de facto* merger of the Buyer on the one hand, and any of the Debtor, SIC or SIC's Affiliates on the other hand, and there is no continuity of enterprise between any of the Debtor, SIC or SIC's Affiliates on the one hand, and the Buyer on the other hand.  The Buyer would not have entered into the APA if the transfer of the Transferred Assets was not made free and clear of any successor liability whatsoever to the Buyer.  None of the transactions contemplated by the APA, including, without limitation, the assumption and assignment of the Designated Contracts, is being undertaken for the purpose of escaping liability for any of the Debtor's debts or hindering, delaying, or defrauding any creditors under the Bankruptcy Code and under the laws of the United States, any state, territory, possession, or the District of Columbia.

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed   12/28/20   Page 25 of 48

## Validity of Transfer and Authorizations

HH.   The Transferred Assets constitute property of the Debtor's estate and title thereto is vested in the Debtor's estate within the meaning of section 541(a) of the Bankruptcy Code.  The Debtor has all right, title and interest in the Transferred Assets required to transfer and convey such Transferred Assets to the Buyer.  The Trustee has full corporate power and authority to execute and deliver the APA, and all other documents contemplated thereby, and has all corporate authority necessary to consummate the transactions contemplated by the APA.   No consents or approvals, other than those expressly provided for in the APA, are required for the Trustee to consummate the transactions contemplated by the APA on behalf of the Debtor.

II.   The appointment of a consumer privacy ombudsman pursuant to section 363(b)(1) or section 332 of the Bankruptcy Code is not required with respect to the relief requested in the Motion.

## No *Sub Rosa* Plan

JJ.   Because time is of the essence, the Seller has good business reasons to sell the Transferred Assets prior to obtaining the Bankruptcy Court's confirmation of a plan of reorganization.  The Sale neither impermissibly restructures the rights of the Debtor's creditors nor impermissibly dictates the terms of a plan of reorganization or liquidation of the Debtor.  The Sale Order does not dictate or direct

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed   12/28/20   Page 26 of 48

the distribution of the cash proceeds of the Sale of the Purchased Assets. The Sale Order, the APA, and the transactions contemplated therein do not constitute a *sub-rosa* plan.

### Best Interest of Creditors

KK.    Given all of the circumstances of this Chapter 11 Case and the adequacy and fair value of the consideration provided by the Buyer under the APA, the Sale constitutes a reasonable and sound exercise of the Trustee's business judgment, is in the best interests of the Debtor, its bankruptcy estate, its creditors, and all other parties in interest in this Chapter 11 Case, and should be approved.

LL.    Time is of the essence in consummating the transactions contemplated by the APA. Cause has been shown as to why the Sale Order should not be subject to any stay provided by Bankruptcy Rule 6004(h).

**IT IS HEREBY ORDERED THAT:**

1.    The relief requested in the Motion, as implemented by the Bidding Procedures Order and the Sale of the Transferred Assets to the Buyer pursuant to the APA, is granted and approved as set forth herein.

2.    Any and all objections and responses to the Motion that have not been withdrawn, waived, settled, or resolved, and all reservations of rights included therein, are hereby overruled and denied on the merits. Any party who did not object or who withdrew its objection is deemed to have consented to the Sale under the

- 27 -

terms of the APA pursuant to section 363(f)(2) or section 365 of the Bankruptcy Code, or any other applicable provision of the Bankruptcy Code and pursuant to the Bidding Procedures Order. Notice of the Motion, the Sale Hearing, and the Sale was fair and equitable under the circumstances, and complied in all respects with section 102(1) of the Bankruptcy Code and Bankruptcy Rules 2002, 6004, and 6006.

## **Approval of the APA**

3.     The APA, including all other ancillary documents, and all of the terms and conditions thereof, and the Sale contemplated thereby, is hereby approved as provided herein.

4.     Pursuant to sections 105, 363 and 365 of the Bankruptcy Code, the Debtor is authorized to perform its obligations under and comply with the terms of the APA, pursuant to and in accordance with the terms and conditions of the APA and the Sale Order.

5.     The Trustee, the Debtor and its affiliates, officers, employees and agents, are authorized to execute and deliver, and empowered to perform under, consummate and implement, the APA, together with all additional instruments and documents that may be reasonably necessary or desirable to implement the APA, and to take all further actions and execute such other documents as may be (a) necessary or appropriate to the performance of the obligations contemplated by the APA, including, without limitation, making any state or local filings necessary or

- 28 -

advisable in connection with the Sale, and (b) as may be reasonably requested by the Buyer to implement the APA, in accordance with their terms thereof, without further order of this Court.

6. The Sale Order and the APA shall be binding in all respects upon, and shall inure to the benefit of, the Trustee, the Debtor, the Debtor's bankruptcy estate, its affiliates, all creditors, all holders of equity interests in the Debtor, all holders of any Interests or Claims (whether known or unknown) against the Debtor, any holders of Interests or Claims against or on all or any portion of the Transferred Assets or against Debtor, SIC, or SIC's Affiliates, all counterparties to any executory contract or unexpired lease of the Debtor, Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, and any trustees, examiners, or other fiduciary under any section of the Bankruptcy Code, if any, subsequently appointed in this Chapter 11 Case or upon a conversion of this Chapter 11 Case to chapter 7 under the Bankruptcy Code. The terms and provisions of the APA and the Sale Order will inure to the benefit of the Trustee, the Debtor, its bankruptcy estate, and its creditors, the Buyer and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, and any other affected third parties, including all persons asserting any Interests or Claims in the Transferred Assets to be sold to the Buyer pursuant to the APA, notwithstanding any subsequent appointment of any trustee(s), party, entity, or other fiduciary under any section of any chapter of the

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed  12/28/20   Page 29 of 48

Bankruptcy Code, as to which trustee(s), party, entity, or other fiduciary such terms and provisions likewise will be binding. In the event that Seller receives a Superior Proposal which is approved by this Court, payment of the break-fee is appropriate in light of the substantial legal, environmental and asset due diligence and other efforts expended by Buyer in connection with the proposed transaction, including negotiating the APA and Transaction Documents, all of which generated substantial value to the Estate.

## Sale and Transfer of the Transferred Assets

7.     Pursuant to sections 105(a), 363(b), 363(f), 365(b) and 365(f) of the Bankruptcy Code, upon the Closing and pursuant to and except as otherwise set forth in the APA and this Sale Order, the Transferred Assets will be transferred to the Buyer free and clear of all Interests or Claims (other than Assumed Liabilities and Permitted Liens) that existed prior to the Closing of any person, including, without limitation, all such Interests or Claims specifically enumerated in the Sale Order, whether arising by agreement, by statute, or otherwise and whether occurring or arising before, on, or after the Petition Date, whether known or unknown, occurring, or arising prior to such transfer, with all such Interests or Claims to attach to the cash proceeds of the Sale, in the order of their relative priority, and with the same validity, force, and effect the holder of such Interests or Claims had against the Purchased Assets prior to the Closing, subject to any claims and defenses that the Debtor and

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed   12/28/20   Page 30 of 48

its bankruptcy estate may possess with respect thereto. For the avoidance of doubt, nothing in the Sale Order establishes any rights or interests in the Transferred Assets (other than the Debtor's rights and interests in such Transferred Assets and the Buyer's rights and interests in the Transferred Assets from and after the Closing), and nothing herein shall be construed to govern or affect the distributions of the cash proceeds from the Sale of the Purchased Assets.

8.      On the Closing Date, the Sale Order will be broadly construed, and will constitute for any and all purposes, a full and complete general assignment, conveyance, and transfer of all of the Transferred Assets or bills of sale transferring good and marketable title in such Transferred Assets to the Buyer, as is where is, free and clear of all Claims and Interests pursuant to the terms, conditions, and exceptions set forth in the Sale Order and the APA. For the avoidance of doubt, the Excluded Assets set forth in the APA are not included in the Transferred Assets and such Excluded Assets shall remain property of the Debtor's estate.

9.      Subject to the terms and conditions of the Sale Order, the transfer of Transferred Assets to the Buyer pursuant to the APA and the consummation of the Sale and any related actions contemplated thereby do not require any consents other than as specifically provided for in the Sale Order and the APA, constitute a legal, valid, and effective transfer of the Transferred Assets, and will vest the Buyer with all of the Debtor's right, title, and interest in and to the Transferred Assets as set

forth in the Sale Order and the APA, as applicable, free and clear of all Interests or Claims of any kind or nature whatsoever (except as otherwise assumed in, or permitted by, the APA and this Sale Order).

10.    Except to the extent expressly included in the Assumed Liabilities or Permitted Liens or to enforce the APA, or as provided in this Sale Order, upon the Closing, all entities or persons are permanently and forever prohibited, barred, estopped, and permanently enjoined from asserting against the Buyer, and its permitted successors, designees, and assigns, or property, or the Transferred Assets conveyed in accordance with the APA, any Interests or Claims of any kind or nature whatsoever arising prior to Closing, including, without limitation, under any theory of successor or transferee liability, *de facto* merger or continuity liability, whether known or unknown as of the Closing, now existing or hereafter arising, asserted or unasserted, fixed or contingent, liquidated or unliquidated.

11.    To the extent provided by section 525 of the Bankruptcy Code, no governmental unit as defined in 11 U.S.C. § 101(27) ("Governmental Unit") may deny, revoke, suspend, or refuse to renew any permit, license, or similar grant included within or relating to the operation of the Transferred Assets sold, transferred, or conveyed to the Buyer solely on account of the filing or pendency of this Chapter 11 Case or the consummation of the transactions contemplated by the APA and the Sale Order.  Upon the Closing, the Buyer will be deemed to be

substituted nunc pro tunc for the Debtor as party to the applicable Incidental Rights, provided that Buyer shall not be deemed successor and, pursuant to Paragraph FF above and Paragraphs 30 through 33, below, Buyer shall have no successor liability thereto. Nothing in this paragraph shall limit a Governmental Unit's authority to deny, revoke, suspend, or refuse to renew any permit, license, or similar grant for reasons other than the filing or pendency of this Chapter 11 Case or the consummation of the transactions contemplated by the APA and the Sale Order.

12.    Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, all counterparties to the Designated Contracts are forever barred from raising or asserting against the Debtor and its estate or the Buyer any assignment fee, default, breach, claim, pecuniary loss, or condition to assignment, arising under or related to the Designated Contracts, existing as of the date that such Designated Contracts are assumed or arising by reason of or in connection with the Closing.

### Good Faith of the Buyer

13.    The Buyer is a good faith purchaser within the meaning of section 363(m) of the Bankruptcy Code and, as such, is entitled to the full protections of section 363(m) of the Bankruptcy Code.  The Sale contemplated by the APA is undertaken by the Buyer without collusion and in good faith, as that term is used in section 363(m) of the Bankruptcy Code and, accordingly, the reversal or modification on appeal of the authorization provided herein to consummate the Sale

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed   12/28/20   Page 33 of 48

shall not affect the validity of the Sale (including the assumption and assignment of the Designated Contracts), unless such authorization and consummation of the Sale are duly and properly stayed pending such appeal.

14.     Neither the Trustee, the Debtor, the Buyer nor any affiliate or representative, agent, or advisor of either the Debtor or Buyer have engaged in any collusion with other bidders or other parties or have taken any other action or inaction that would cause or permit the Sale to be avoided or costs or damages to be imposed under section 363(n) of the Bankruptcy Code or otherwise.   The consideration provided by the Buyer for the Transferred Assets under the APA is fair and reasonable and is not less than the value of such assets, and the Sale may not be avoided under section 363(n) of the Bankruptcy Code.

15.     The Buyer is not an "insider" of the Debtor as that term is defined in section 101(31) of the Bankruptcy Code.

### Assumption and Assignment of the Designated Contracts

16.     The Seller has satisfied the requirements of Sections 365(b)(1) and 365(f)(2) of the Bankruptcy Code.

17.     Pursuant to sections 105(a), 363, and 365 of the Bankruptcy Code, and subject to and conditioned upon the occurrence of the Closing Date, the Debtor's assumption and assignment to the Buyer, and the Buyer's assumption, on the terms set forth in the Sale Order and the APA of the Assumable Contracts, is hereby

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed  12/28/20   Page 34 of 48

approved in its entirety, and the requirements of section 365 of the Bankruptcy Code with respect thereto are hereby deemed satisfied.

18. The Seller is hereby authorized to enter into additional agreements in accordance with the APA and the Services Agreement, and upon agreement of Buyer, to include such additional agreements as Designated Contracts hereunder. The Seller is hereby authorized in accordance with sections 105(a), 363, and 365 of the Bankruptcy Code to assume and assign to the Buyer, effective upon the Closing Date, the Designated Contracts free and clear of all Interests or Claims of any kind or nature whatsoever (except as otherwise expressly assumed in, or permitted by, the APA or conditioned by the terms contained within this Sale Order) and execute and deliver to the Buyer such documents or other instruments as may be necessary to assign and transfer the Designated Contracts to the Buyer.

19. Upon the Closing, in accordance with sections 363 and 365 of the Bankruptcy Code, the Buyer will be fully and irrevocably vested in all right, title, and interest of each Designated Contract and the Trustee and the estate will be relieved from any liability for any breach of a Designated Contract occurring after assignment to Buyer.

20. The Designated Contracts will be transferred and assigned to, and remain in full force and effect for the benefit of, the Buyer in accordance with their respective terms pursuant to the APA, notwithstanding any provision in any such

- 35 -

Designated Contract (including those of the type described in sections 365(b)(2), (e)(1), and (f) of the Bankruptcy Code) that prohibits, restricts, or conditions such assignment or transfer.

21.     Pursuant to sections 365(b)(1)(A) and (B) of the Bankruptcy Code, at the Closing, the Cure Amounts (if any) relating to any Designated Contract will be paid in accordance with the APA.

22.     The payment of the applicable Cure Amounts (if any), or any other cure amount reached by agreement after any Cure/Assignment Objection, will effect a cure of all defaults and all other obligations or liabilities under any Designated Contract existing, occurring, arising, or accruing prior to the date that such executory contracts or unexpired leases are assumed and compensate for any actual pecuniary loss to such non-debtor counterparty resulting from such default.

23.     Upon the Closing, the Buyer will be assigned the Designated Contracts, and, pursuant to section 365(f) of the Bankruptcy Code, the assignment by the Debtor of such Designated Contracts will not be a default thereunder.  Other than the payment of the relevant Cure Amounts (if any) in accordance with the APA, neither the Debtor and its estate nor the Buyer will have any further liabilities to the non-debtor counterparties to the Designated Contracts, other than Buyer's obligations under the Designated Contracts that accrue or become due and payable on or after the date that such Designated Contracts are assumed.

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed 12/28/20   Page 36 of 48

24.     Except as otherwise agreed in writing between the Debtor and the non-debtor counterparties to the Designated Contracts, stated on the record of the Sale Hearing, set forth in the Sale Order, or determined by Court order, the Cure Amounts for the Designated Contracts in effect as of the date hereof are hereby fixed at the amounts set forth on Cure Notice, and the non-debtor counterparties to such Designated Contracts are forever bound by such Cure Amounts and, other than with respect to enforcement for payment of such Cure Amounts, are hereby enjoined from taking any action against the Trustee, the Debtor and its bankruptcy estate, the Buyer, and all agents, representatives, affiliates, and permitted successors and assigns of the Buyer, or the Transferred Assets with respect to any claim for cure under any Assumable Contract.

25.     The failure of the Debtor or the Buyer to enforce at any time one or more terms or conditions of any Assumable Contract shall not be a waiver of such terms or conditions, or of the Trustee's, Debtor's and the Buyer's rights to enforce every term and condition of the Designated Contracts.

26.     Any provisions in any Designated Contract that prohibit or condition the assignment of such Designated Contract or allow the party to such Designated Contract to terminate, recapture, impose any penalty, condition on renewal or extension or modify any term or condition upon the assignment of such Designated Contract constitute unenforceable anti-assignment provisions that are void, and of

- 37 -

no force and effect.  All other requirements and conditions under sections 363 and 365 of the Bankruptcy Code for the assumption by the Debtor and assignment to the Buyer of the Designated Contracts have been satisfied.

27.     Any party having the right to consent to the assumption or assignment of any Assumable Contract that failed to object to such assumption or assignment is deemed to have waived any objections and consented to such assumption and assignment as required by section 365(c) of the Bankruptcy Code.

28.     Upon the Closing, the Buyer will be deemed to be substituted for the Debtor as a party to the each Designated Contract and the Trustee, the Debtor and its estate will be relieved, pursuant to section 365(k) of the Bankruptcy Code, from any further liability under the Designated Contracts.

29.     The Buyer has provided adequate assurance of future performance under each relevant Designated Contract within the meaning of sections 365(b)(1)(C) and 365(f)(2)(B) of the Bankruptcy Code.

### No Successor Liability

30.     Except as otherwise set forth in the APA or this Sale Order, neither the Buyer, nor any of its successors or assigns, or any of their respective affiliates shall have any liability for any Claim or Interest that arose or occurred prior to the Closing, or otherwise are able to be asserted against the Debtor, SIC or SIC's Affiliates, or is related to the Transferred Assets prior to the Closing.  The Buyer is not and shall not

- 38 -

be deemed a "successor" to the Debtor, SIC or SIC's Affiliates, or Debtor's estate, have not, *de facto* or otherwise, merged with or into the Debtor, SIC or SIC's Affiliates, or be a mere continuation or substantial continuation of the Debtor, SIC or SIC's Affiliates, or the enterprise of the Debtor, SIC or SIC's Affiliates, under any theory of law or equity as a result of any action taken in connection with the APA or any of the transactions or documents ancillary thereto or contemplated thereby or in connection with the acquisition of the Transferred Assets.

31.     The Buyer is not a "successor" to the Debtor, SIC or SIC's Affiliates, or the Debtor's estate by reason of any theory of law or equity, and the Buyer shall not assume, or be deemed to assume, or in any way be responsible for any liability or obligation of the Debtor, SIC or SIC's Affiliates, and/or Debtor's estate, other than the Assumed Liabilities, with respect to the Transferred Assets or otherwise, including, but not limited to, under any bulk sales law, doctrine or theory of successor liability, or similar theory or basis of liability.  Except to the extent the Buyer assumes Assumed Liabilities and is ultimately permitted to assume the Assumed Liabilities pursuant to the APA, or as otherwise provided in this Sale Order, neither the purchase of the Transferred Assets by the Buyer nor the fact that the Buyer is using any of the Transferred Assets previously used by the Debtor, SIC, or SIC's Affiliates will cause the Buyer to be deemed a successor in any respect to the Debtor's, SIC's or SIC's Affiliates' business or incur any liability

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed  12/28/20   Page 39 of 48

derived therefrom within the meaning of any foreign, federal, state or local revenue, pension, ERISA, tax, labor (including any WARN Act), employment, Environmental Law or other law, rule or regulation (including filing requirements under any such laws, rules or regulations), or under any products liability law or doctrine with respect to the Debtor's liability under such law, rule or regulation or doctrine. Pursuant to the APA, the Buyer is not purchasing all of the Debtor's assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities, and the Buyer is not holding itself out to the public as a continuation of the Debtor, SIC or SIC's Affiliates. The Buyer is not a mere continuation of or successor to the Debtor, SIC, or SIC's Affiliates or the Debtor's estate in any respect.

32. The Buyer has given substantial consideration under the APA, which consideration shall constitute valid and valuable consideration for the releases of any potential claims of successor liability of the Buyer and which shall be deemed to have been given in favor of the Buyer by all holders of Claims or Interests in or against the Debtor, or the Transferred Assets. Upon consummation of the Sale Transaction, the Buyer shall not be deemed to (i) be the successor to the Debtor, SIC or SIC's Affiliates; (ii) have, de facto or otherwise, merged with or into the Debtor, SIC or SIC's Affiliates; or (iii) be a mere continuation, alter ego or substantial continuation of the Debtor, SIC or SIC's Affiliates.

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed   12/28/20   Page 40 of 48

33.     Except to the extent specifically agreed by the Buyer in the APA or this Sale Order, the Buyer shall not have any liability, responsibility or obligation for any Claims or Interests of the Debtor, SIC or SIC's Affiliates, or Debtor's estate, including any claims, liabilities or other obligations related to the Transferred Assets prior to Closing Date.  The Buyer is not purchasing all of the Debtor's assets in that the Buyer is not purchasing any of the Excluded Assets or assuming the Excluded Liabilities.   Under no circumstances shall the Buyer be deemed a successor of or to the Debtor for any encumbrances against, in or to the Debtor or the Transferred Assets.  For the purposes of this section of this Sale Order, all references to the Buyer shall include the Buyer's affiliates, subsidiaries and shareholders.

## Additional Provisions

34.     In connection with the Closing, a certified copy of the Sale Order evidencing the release, cancelation and termination provided herein of any Interests or Claims of record on the Transferred Assets may be filed, recorded with or provided to the appropriate filing agents, filing officers, administrative agencies or units, governmental departments, secretaries of state, federal, state and local officials and all other persons, institutions, agencies and entities who may be required by operation of law, the duties of their office or contract, including, for the avoidance of doubt, the Department of Hawaiian Home Lands.

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed  12/28/20   Page 41 of 48

35. The Closing of the Sale is contingent on certain regulatory approvals. The APA conditions the obligations of the Buyer to consummate the Sale upon the occurrence of certain conditions, including the regulatory approvals and the absence of certain material changes.

36. As soon as practicable after the entry of this Order and prior to the Closing, the Debtor is hereby authorized to enter into the Services Agreement with the Buyer in substantially the form attached hereto as **<u>Exhibit B</u>**, with any changes as may be agreed to by the Parties thereto.

37. As soon as practicable after the entry of this Order and prior to the Closing, the Debtor is hereby authorized to enter into the Transaction Documents with any changes as may be agreed to by the Parties thereto.

38. Upon consummation of the Sale, if any person or entity that has filed financing statements, mortgages, mechanic's liens, *lis pendens*, or other documents or agreements evidencing Interests or Claims against or in the Transferred Assets shall not have delivered to the Trustee prior to the Closing, in proper form for filing and executed by the appropriate parties, termination statements, instruments of satisfactions, releases of all Interests or Claims that the person or entity has with respect to the Transferred Assets (unless otherwise assumed in, or permitted by, the APA), or otherwise, then: (a) the Trustee is hereby authorized, on behalf of the Debtor, to execute and file such statements, instruments, releases and other

- 42 -

documents on behalf of the person or entity with respect to the Transferred Assets; and (b) the Buyer is hereby authorized to file, register, or otherwise record a certified copy of the Sale Order, which, once filed, registered or otherwise recorded, will constitute conclusive evidence of the release of all Interests or Claims in the Transferred Assets of any kind or nature (except as otherwise assumed in, or permitted by, the APA); *provided that*, notwithstanding anything in the Sale Order or the APA to the contrary, the provisions of the Sale Order will be self-executing, and neither the Trustee nor Buyer will be required to execute or file releases, termination statements, assignments, consents, or other instruments in order to effectuate, consummate, and implement the provisions of the Sale Order. For the avoidance of doubt, upon consummation of the Sale, the Buyer is authorized to file termination statements, lien terminations, or other amendments in any required jurisdiction to remove and record, notice filings or financing statements recorded to attach, perfect, or otherwise notice any lien or encumbrance that is extinguished or otherwise released pursuant to the Sale Order under section 363 of the Bankruptcy Code and the related provisions of the Bankruptcy Code. Each and every federal, state, and local governmental agency or department is hereby authorized to accept any and all documents and instruments necessary and appropriate to consummate the transactions contemplated by the APA, including, without limitation, recordation of the Sale Order. The Sale Order shall be binding upon and shall govern the acts

- 43 -

of all persons including without limitation, all filing agents, filing officers, title agents, title companies, recorders of mortgages, recorders of deeds, registrars of deeds, administrative agencies, governmental departments, secretaries of state, federal, state, and local officials, and all other persons who may be required by operation of law, the duties of their office, or contract, to accept, file, register, or otherwise record or release any documents or instruments, or who may be required to report or insure any title or state of title in or to any of such assets or other property interests.

39.     All persons or entities that are currently in possession of some or all of the Transferred Assets in contravention of the US Marshal Sale, the Settlement Agreement or MRA, including for the avoidance of doubt, SIC and SIC's Affiliates or any person or entity claiming by or through SIC or SIC's Affiliates, are hereby directed to surrender possession of the Transferred Assets except as Debtor and Buyer may otherwise agree. All persons or entities that on the Closing may be, in possession of some or all of the Transferred Assets, including for the avoidance of doubt, SIC and SIC's Affiliates or any person or entity claiming by or through SIC or SIC's Affiliates, are hereby directed to surrender possession of the Transferred Assets to the Buyer upon the Closing or on such earlier date as the Trustee may direct in order for Buyer to perform its obligations under the Services Agreement.

- 44 -

40.    The Sale Order shall be effective as a determination that, upon the Closing, all Claims or Interests of any kind or nature whatsoever existing as to the Transferred Assets prior to the Closing (other than the Assumed Liabilities and Permitted Liens) have been unconditionally released, discharged, and terminated and that the conveyances described herein have been effected as set forth in the Sale Order, including, without limitation, any liability for accrued but unpaid taxes, fees, assessments or imposts.

41.    The APA and any related agreements, documents or other instruments may be modified, amended or supplemented through a written document signed by the parties thereto in accordance with the terms thereof and the Sale Order without further order of this Court; *provided* that no such modification, amendment or supplement may be made without further order of this Court if it is materially adverse to the Debtor or the Debtor's estate. The Trustee and the Debtor are authorized to perform each of its covenants and undertakings as provided in the APA, Services Agreement and Transaction Documents prior to or after the Closing without further order of this Court.

42.    The APA shall be of full force and effect, regardless of Debtor's lack of good standing in any jurisdiction in which the Debtor is formed or authorized to transact business.

43.     To the extent applicable, the automatic stay pursuant to section 362 of the Bankruptcy Code is hereby lifted with respect to the Debtor to the extent necessary, without further order of the Court (a) to allow the Buyer to give the Trustee or the Debtor any notice provided for in the APA, (b) to allow the Buyer to take any and all actions permitted by the APA and Services Agreement, and (c) to allow Debtor and Buyer to take any and all actions permitted under this Sale Order.

44.     No bulk sales law or any similar law of any state or other jurisdiction shall apply to the Debtor's conveyance of the Transferred Assets.

45.     Nothing in the Sale Order shall be deemed to waive, release, extinguish or estop the Trustee, the Debtor or its estate from asserting or otherwise impairing or diminishing any right (including any right of recoupment), claim, cause of action, defense, offset or counterclaim in respect of any asset that is not a Transferred Asset.

46.     The failure specifically to include or make reference to any particular provisions of the APA in the Sale Order shall not diminish or impair the effectiveness of such provision, it being the intent of this Court that the APA as conditioned by this Sale Order is authorized and approved in its entirety.

47.     Absent a subsequent order of this Court to the contrary, the Sale Order shall be binding in all respects upon any other trustees, examiners, "responsible persons" or other fiduciaries appointed in this Chapter 11 Case or upon a conversion to chapter 7 under the Bankruptcy Code.

- 46 -

48.     Nothing in this Sale Order shall be deemed to modify the obligations of the Buyer under federal statutes and regulations designed to protect public health and safety, including but not limited to any Environmental Law, with respect to the Buyer's operation, maintenance, transfer, disposal, or abandonment of any Purchased Assets after Closing.

49.     Notwithstanding any other provision of this Order or any other Order of this Court, no sale, transfer or assignment of any rights and interests of the Debtor in any federal license or authorization issued by the Federal Communications Commission ("FCC") shall take place prior to the issuance of FCC regulatory approval for such sale, transfer or assignment pursuant to the Cable Landing License Act of 1921, Executive Order 10,530, and the rules and regulations promulgated under such statutes.  The FCC's rights and powers to take any action pursuant to its regulatory authority, including, but not limited to, imposing any regulatory conditions on such sales, transfers and assignments and setting any regulatory fines or forfeitures, are fully preserved, and nothing herein shall proscribe or constrain the FCC's exercise of such power or authority to the extent provided by law.

50.     Notwithstanding the provisions of Bankruptcy Rule 6004 or any applicable provisions of the Local Rules, this Sale Order shall not be stayed for fourteen (14) days after the entry hereof, but shall be effective and enforceable immediately upon entry, and the fourteen (14) day stay provided in such rules is

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed  12/28/20   Page 47 of 48

hereby expressly waived and shall not apply. Any party objecting to this Sale Order must exercise due diligence in filing an appeal and pursuing a stay within the time prescribed by law and prior to the Closing Date, or risk its appeal will be foreclosed as moot.

51.     In the event of any conflict between the Sale Order and the APA, the Sale Order shall control in all respects.

52.     This Court shall retain exclusive jurisdiction over any matters related to or arising from the Settlement Agreement and the implementation of the Sale Order, including without limitation, the enforcement of the US Marshal Sale, and Settlement Agreement Representations and Settlement Agreement Covenants.

**END OF ORDER**

Submitted by:

GOODSILL ANDERSON QUINN & STIFEL
A LIMITED LIABILITY LAW PARTNERSHIP LLP

JOHNATHAN C. BOLTON     9650-0
  jbolton@goodsill.com
CHRISTOPHER P. ST. SURE   10001-0
  cstsure@goodsill.com
First Hawaiian Center, Suite 1600
999 Bishop Street
Honolulu, Hawaii  96813
Telephone:  (808) 547-5600
Facsimile:  (808) 547-5880

Attorneys for Chapter 11 Trustee
MICHAEL KATZENSTEIN

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 366   Filed  12/28/20   Page 48 of 48