CLARE E. CONNORS   7936
Attorney General, State of Hawaiʻi
CRAIG Y. IHA                     7919
RYAN K. P. KANAKAOLE    9613
Deputy Attorneys General
Department of the Attorney
 General, State of Hawaiʻi
425 Queen Street
Honolulu, Hawaiʻi  96813
Telephone:  (808) 587-2978
Facsimile:  (808) 586-1372
Email:       ryan.kp.kanakaole@hawaii.gov

ASHFORD & WRISTON
A Limited Liability Law Partnership LLP
KEVIN W. HERRING    6722-0
999 Bishop Street
First Hawaiian Center, 14th Floor
Honolulu, Hawaii 96813
Telephone:  (808) 539-0440
Facsimile:  (808) 533-4945
Email:  kherring@awlaw.com

Attorneys for the Department of Hawaiian Home Lands,
State of Hawaiʻi

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAI`I

| | |
|---|---|
| In re | ) Case No. 18-01319 (RJF) |
| | ) (Chapter 11) |
| PANIOLO CABLE COMPANY, LLC | ) |
| | ) DEPARTMENT OF HAWAIIAN |
| Debtor. | ) HOME LANDS' MEMORANDUM |
| | ) IN SUPPORT OF MOTION OF |
| | ) HAWAIIAN TELCOM, INC. TO |
| | ) ENFORCE SALE ORDER (DKT. |
| | ) #459); DECLARATION OF |
| | ) WILLIAM J. AILA, JR.; |

|  | ) | DECLARATION OF KEVIN W. |
|---|---|---|
|  | ) | HERRING; EXHIBITS "1" – "2" |
|  | ) | |
|  | ) | Hearing |
|  | ) | Date: November 1, 2021 |
|  | ) | Time: 2:00 p.m. |
|  | ) | Judge: Hon. Robert J. Faris |
|  | ) | |
|  | ) | [Related Docket Entry: Dkt. #459] |

DEPARTMENT OF HAWAIIAN HOME LANDS'
MEMORANDUM IN SUPPORT OF MOTION OF
HAWAIIAN TELCOM, INC. TO ENFORCE SALE ORDER (DKT. #459)

Pursuant to LBR 9013-2, the State of Hawai'i, Department of Hawaiian Home Lands ("DHHL") submits this Memorandum in Support of the Motion of Hawaiian Telcom, Inc. to Enforce Sale Order (Dkt. #459) (the "Motion").

## I.  SIC's Campaign of Obstruction Impairs the Paniolo Network and Threatens to Disrupt Essential Services to DHHL Beneficiaries

As set forth in the Motion, Sandwich Isles Communications, Inc. ("SIC") and related parties have engaged in "a campaign of obstruction, frustration and delay" which has impaired Hawaiian Telcom, Inc.'s ("HT") ability to efficiently secure and operate the Transferred Assets, which include the Paniolo Network. *See* Motion, p.2.  Significant portions of the Paniolo Network are physically located on lands owned by DHHL.

"DHHL is responsible for managing the Hawaiian home lands for the benefit of native Hawaiians under the Hawaiian Homes Commission Act of 1920, as

amended. Thousands of families reside on the Hawaiian home lands, which are comprised of approximately 203,000 acres[.]" *In re Connect America Fund; Sandwich Isles Communications, Inc.*, Federal Communications Commission, WC Docket No. 10-90; CC Docket No. 96-45 (FCC 17-85, July 3, 2017) (the "2017 FCC Order") (Exhibit "1").

The Paniolo Network provides "middle-mile" telecommunications services which, among other things, link up to "last mile" infrastructure operated by SIC. SIC's last mile infrastructure, in turn, provides critical telecommunications services to DHHL, DHHL's beneficiaries, and DHHL's lessees throughout the State of Hawaii.

As set forth in the Motion, contemporaneously with HT's court-confirmed acquisition of the Paniolo Network, HT requested that SIC provide "basic network and usage information". Motion, p.4. In addition, HT requested that SIC enter into a contract covering SIC's continued use of middle mile services through the Paniolo Network. Id. SIC did not provide the requested information and did not "seriously engage in any negotiations" concerning its continued use of the Paniolo Network. Id. at 5.

Instead, DHHL is informed that HT has been unable to obtain SIC's cooperation in surrendering possession of certain assets and SIC has refused to provide information about the configuration and operation of the network. *See*

Declaration of William J. Aila, Jr., ¶2. It is DHHL's further understanding that SIC is not paying for the middle-mile services that are now provided by HT to SIC through the Paniolo Network. See id.

## II. SIC Has Publicly Stated that the Dispute with HT will Affect Services

Beginning on or about September 11, 2021, SIC began publicly stating that because of its dispute with HT, "phone, internet and/or video services" to DHHL and DHHL's beneficiaries and lessees would be impacted. These statements appear on the SIC website at www.sandwichisles.com. Id. at ¶3. (Exhibit "2"). The actions of SIC were a source of great concern, because it appeared that SIC was incapable of providing reasonable assurances that it would be willing and able to continue providing reliable, uninterrupted telecommunications services.

As a result of SIC's actions, DHHL and its Commissioners have received numerous "communications from beneficiaries and lessees concerned about the possibility that SIC will cease to provide services due to its dispute with HT." Id. at ¶9. The uncertainty created by SIC's intransigence is untenable and unreasonable. Telecommunications services are essential and critical, particularly in remote locations. The essential nature of these services has been amplified by our community's recent experience with the COVID-19 pandemic. "[T]elephone, internet and other broadband services are critical for the delivery of education,

health, financial and other services necessary to the well-being of DHHL's beneficiary population." Id. at ¶5.

DHHL believes that it "is imperative that SIC cooperate with HT and other carriers to ensure that there is no disruption in services and to facilitate reasonable shared access to critical infrastructure." Id. at ¶9  Given SIC's actions, it appears that such cooperation will not occur absent further Court action.  Moreover, absent further Court action it appears likely that the integrity and value of the Paniolo Network will be impaired.

SIC appears to believe that its refusal to cooperate is justified because it claims to be the "exclusive" provider of broadband telecommunications services on the Home Lands.  SIC's argument is predicated on its interest under a license that was issued on May 9, 1995 ("License 372").  In 2017, however, the Federal Communications Commission ("FCC") issued an order determining that all claims of exclusivity were preempted by Federal law and therefore unenforceable.  *See* 2017 FCC Order at 12.

### III. Court Action is Required to Address What the Trustee has Identified as Clear and Present Danger

DHHL's concerns about SIC's actions are not unique.  In fact, the Trustee in this action has stated that SIC's actions "represent a **clear and present danger** to the operations, safety and security of the Paniolo Cable Network."  (Dkt. 425 at 12-13.)(emphasis added).

Given the foregoing, HT's request for relief is imminently reasonable. DHHL, in particular, supports HT's request to require SIC to:

 1. provide information about the identity of all users of the Paniolo Network, including Critical Services Users. *See* <u>Motion</u>, p.20 (bullet points 1 and 2);

 2. identify 911 Circuits and circuits designated as Telecommunication Service Priority. <u>Id.</u> (bullet points 3 and 4);

 3. provide reasonable assurances that they will not take unilateral action to terminate Critical Services without reasonable notice. <u>Id.</u> (bullet point 5);

 4. provide documentation of their conduit occupancy requirements on the Paniolo Network. <u>Id.</u> (bullet point 7).

DATED: Honolulu, Hawai'i, October 8, 2021.

      CLARE E. CONNORS
      Attorney General, State of Hawaii

      CRAIG Y. IHA
      RYAN K.P. KANAKAOLE

      <u> /s/ Kevin W. Herring    </u>
      KEVIN W. HERRING

      Attorneys for the Department of
       Hawaiian Home Lands, State of Hawai'i