**Date Signed:**
**November 19, 2021**



SO ORDERED.

Robert J. Faris
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF HAWAII

| | |
|---|---|
| In re: | Chapter 11 |
| PANIOLO CABLE COMPANY, LLC, | Case No. 18-01319 |
| Debtor. | |
| | Re: Dkt. No. 459 |

## ORDER GRANTING IN PART AND DENYING IN PART HAWAIIAN TELCOM'S MOTION TO ENFORCE SALE ORDER

Hawaiian Telcom, Inc., bought assets from the chapter 11 trustee of Paniolo Cable Company, LLC ("Paniolo"). The order approving the sale requires affiliates of Paniolo, including Sandwich Isles Communications,

Inc. ("SIC"), to give possession of the "Transferred Assets" to Hawaiian Telcom. Hawaiian Telcom claims that the order requires SIC to deliver to Hawaiian Telcom certain information, spare parts, and equipment, and to remove its property from premises claimed by Hawaiian Telcom. SIC disagrees. I will GRANT the motion with respect to the spare parts and equipment and DENY it in all other respects, without prejudice.

I.   FACTS

Paniolo, the debtor in this chapter 11 case, owned a network of submarine cables and related equipment that provides telecommunications service to the Hawaiian Homelands. SIC, which is an affiliate of Paniolo, owns and operates a land-based system that connects Paniolo's submarine system to the end users.

After creditors filed an involuntary chapter 11 petition against Paniolo, the court entered an order for relief and directed the appointment of a trustee. The Office of the U.S. Trustee selected Michael Katzenstein to serve in that capacity.

The trustee recovered a judgment against SIC for more than $256 million. He levied on some of SIC's assets that are connected to Paniolo's network and acquired them at a confirmed execution sale.

The trustee then entered into a settlement with SIC and other affiliates. The court approved the settlement (ECF 271). Pursuant to the settlement, the trustee and SIC entered into a Master Relationship Agreement which restructured the relationship between Paniolo and SIC and facilitated an orderly disposition of Paniolo's assets.

The court entered an order ("Sale Order," ECF 366) approving a sale of certain of Paniolo's assets, including the assets acquired from SIC, to Hawaiian Telcom, pursuant to an Asset Purchase Agreement ("APA"). The time for appealing the Sale Order has expired and no appeal has been taken.

The Sale Order and the APA provide that Hawaiian Telcom would acquire from the Trustee the "Transferred Assets." Under the Sale Order, the "Transferred Assets" are defined in the APA (ECF 366 at 3).

3

Under the APA, Hawaiian Telcom had the right to designate the Paniolo contracts that it wished to acquire. Hawaiian Telcom did not designate the Master Relationship Agreement or related agreements.

SIC is not a party to the APA, but the Sale Order provides that "The Sale Order and the APA shall be binding in all respects upon . . . SIC, or SIC's Affiliates . . ." (ECF 366 at 29). Further, the Sale Order expressly imposes binding obligations on SIC:

> All persons or entities that on the Closing may be, in possession of some or all of the Transferred Assets, including for the avoidance of doubt, SIC and SIC's affiliates or any person or entity claiming by or through SIC or SIC's Affiliates, are hereby directed to surrender possession of the Transferred Assets to the Buyer upon the Closing . . . .

(ECF 366 at 44.)

The Sale Order also provides that, "On the Closing Date, the Sale Order will be broadly construed, and will constitute for any and all purposes, a full and complete general assignment, conveyance, and transfer of all of the Transferred Assets . . . ." (ECF 366 at 31.)

The sale closed in December 2020. Shortly before closing, the trustee purported to terminate SIC's rights under the Master Relationship Agreement due to SIC's alleged payment defaults.

## II. DISCUSSION

Hawaiian Telcom moves the court to order SIC and its affiliates to:

- immediately disclose to Hawaiian Telcom the identities of all current users on the Paniolo Network granted access by or through SIC, including but not limited to third-party users, business users, and other carriers;
- immediately disclose the identity of the Critical Services Users on the Paniolo Network granted access by or through SIC;
- as a matter of public safety, immediately identify to Hawaiian Telcom all circuits required for 911 traffic to be routed to public safety answering points that utilize the Paniolo Network and identify any existing voice and trucks the SIC Parties need to retain to allow their networks to deliver any Emergency Alert System and E911 calls/traffic to a Tandem switch for call completion;
- identify all of the SIC Parties' vital voice and data circuits designated as Telecommunication Service Priority;
- provide reasonable assurances that they will not take unilateral action to terminate Critical Services without reasonable notice;
- provide all information requested by Hawaiian Telcom for Hawaiian Telcom to import any remaining usage into Hawaiian Telcom's circuit inventory, management, and billing systems;
- provide documentation of SIC Parties' conduit occupancy requirements on the Paniolo Network;

5

- immediately remove all of their stored materials, spares, office supplies, equipment, abandoned vehicles, accumulated waste, and e-waste from the Paniolo buildings and premises, with a priority focus on items currently located in mechanical rooms and in-building storage spaces;
- transition to Hawaiian Telcom any remaining staging and office space activities from the Paniolo premises; and
- immediately turn over the crate with the subsea spare splice kits, spare fiber cable reels, all spare equipment and cards corresponding to the Paniolo Fujitsu equipment, any tools and test equipment used to support the Paniolo Network, and any additional spare equipment not yet disclosed to Hawaiian Telcom.

(ECF 459 at 23-24). I will refer to the first seven of these requests as the "Information Requests," the eighth and ninth requests as the "Removal Requests," and the final request as the "Spare Parts Request."

### A. Jurisdiction

Hawaiian Telcom argues that the court has subject matter jurisdiction to grant its request because the court has jurisdiction to enforce the Sale Order. It is true that every federal court has jurisdiction to enforce its own orders. *See Local Loan Co. v. Hunt*, 292 U.S. 234, 239 (1934); *Traveler Indem. Co. v. Bailey*, 557 U.S. 137, 151 (2009) (holding that the "Bankruptcy Court plainly had jurisdiction to interpret and enforce its own prior order.").

6

Therefore, the court has jurisdiction to require SIC and its affiliates to do what the Sale Order requires them to do.

Hawaiian Telcom claims that this is a "core proceeding." SIC did not respond to this assertion. Therefore, the bankruptcy court may enter a final judgment.

**B.     Procedure**

SIC contends that Hawaiian Telcom seeks injunctive relief and therefore must commence an adversary proceeding. Fed. R. Bankr. P. 7001. I disagree. Hawaiian Telcom seeks to enforce the injunctive provision of the Sale Order. A party needs to commence an adversary proceeding to obtain a brand-new injunction but does not need to do so in order to enforce an existing injunction.

SIC contends that due process requires an evidentiary hearing. This depends on whether the court must decide disputed issues of material fact. *Caviata Attached Homes, LLC v. U.S. Bank, Nat'l Ass'n* (*In re Caviata Attached Homes, LLC*), 481 B.R. 34, 44 (9th Cir. BAP 2012); *see Khachikyan v. Hahn (In*

7

*re Khachikyan)*, 335 B.R. 121, 126 (9th Cir. BAP 2005). As the following discussion shows, it is not yet clear whether there are any such issues.

### C. The Information Requests

SIC contends that the Sale Order does not require it to turn over information about its customers because that information is not among the Transferred Assets. SIC contends that it owns the information, that the trustee did not acquire the information in the execution sale, and that Hawaiian Telcom could not buy assets that the trustee did not own.

I cannot determine at this point whether SIC is correct. As used in the Sale Order, the Transferred Assets include the Schedule A.2 Assets, which consist of "the Debtor's Assets identified as part of Scheduled [sic] A.2 as described in Schedule 2.1(a)." (ECF 366-1 at 7.) The Schedule 2.1(a) Assets are those assets which the trustee purchased in the execution sale to partially satisfy the judgment against SIC. The assets included are mostly tangible property but also include certain contracts, data, and intangibles. (ECF 366-1 at 232-245.) Because the terms used to describe the intangibles

8

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 537   Filed 11/19/21   Page 8 of 12

are very general, I cannot tell from the record whether the parties intended at the time to include within those items the information Hawaiian Telcom now seeks.

Hawaiian Telcom relies on the provision of the Sale Order that calls for a broad interpretation. But the entire provision makes clear that its purpose is to ensure that Hawaiian Telcom acquires full ownership of the Transferred Assets, and not to expand the definition of Transferred Assets to include property that the trustee never owned or acquired.

### D. The Removal Requests

SIC argues that its affiliates hold a license from the Department of Hawaiian Homelands that permits it to occupy the land and facilities on which its network operates. SIC contends that it has the right to store its property (apparently including its rubbish) in facilities that it shared with Paniolo and now shares with Hawaiian Telcom.

Due to gaps in the existing record, I cannot resolve this issue. First, the license from the Department of Hawaiian Homelands to SIC's affiliates

9

and the sublicenses are not in the record. Second, although the record is clear that the trustee acquired certain "central offices" and "terminal buildings" by virtue of the execution sale, it is not clear that the Trustee acquired *exclusive* rights of occupancy. After all, SIC's above-water system is still connected to Paniolo's submarine system in those buildings. Third, it is not clear what contract or arrangement currently governs the relationship between Hawaiian Telcom and SIC. The Master Relationship Agreement and related agreements clarified the situation, but Hawaiian Telcom chose not to acquire the Master Relationship Agreement or the related agreements. Further, SIC contends that the Master Relationship Agreement required the trustee to sell the assets subject to that agreement. The trustee and Hawaiian Telcom disagree, but that dispute is not currently before me for decision.

    Simply put, I cannot determine on the existing record whether Hawaiian Telcom has the exclusive right to occupy the premises in which SIC's property is located.

U.S. Bankruptcy Court - Hawaii   #18-01319   Dkt # 537   Filed 11/19/21   Page 10 of 12

### E. The Spare Parts Request

SIC did not respond to Hawaiian Tel's request for turnover of spare parts and equipment associated with the submarine system. These items are undoubtedly "Transferred Assets" under the Sale Order. Accordingly, I will grant that portion of Hawaiian Tel's request.

## III. CONCLUSION

I am sympathetic to the position expressed by Hawaiian Telcom, with the support of the Department of Hawaiian Homelands (ECF 472) and the United States on behalf of the Rural Utilities Service (ECF 480), that SIC's intransigence jeopardizes essential telecommunications service to the Hawaiian Homelands. SIC's professed concern for the native Hawaiian community is disingenuous at best. But I cannot grant a remedy unless there is an evidentiary and legal basis to do so, and the existing record does not adequately support most of Hawaiian Telcom's request. I express no opinion on whether Hawaiian Telcom would be entitled to relief on a complete record or on any other legal basis.

Therefore, the motion is GRANTED in part, with respect to the spare parts and equipment for the submarine system, and DENIED without prejudice in all other respects. Counsel for Hawaiian Telcom shall prepare and circulate a proposed separate judgment.

**END OF ORDER**