HOLLY T. SHIKADA 4017
Attorney General, State of Hawai'i
CRAIG Y. IHA 7919
RYAN K. P. KANAKAOLE 9613
ALYSSA-MARIE Y. KAU 11135
Deputy Attorneys General
Department of the Attorney
 General, State of Hawai'i
425 Queen Street
Honolulu, Hawai'i 96813
Telephone: (808) 587-2978
Facsimile: (808) 586-1372
Email: ryan.kp.kanakaole@hawaii.gov

ASHFORD & WRISTON
A Limited Liability Law Partnership LLP
KEVIN W. HERRING 6722-0
999 Bishop Street
First Hawaiian Center, 14th Floor
Honolulu, Hawaii 96813
Telephone: (808) 539-0440
Facsimile: (808) 533-4945
Email: kherring@awlaw.com

Attorneys for the Department of Hawaiian Home Lands,
State of Hawai'i

IN THE UNITED STATES BANKRUPTCY COURT

FOR THE DISTRICT OF HAWAI`I

| In re | ) Case No. 18-01319 (RJF) |
|---|---|
| | ) (Chapter 11) |
| PANIOLO CABLE COMPANY, LLC | ) |
| | ) DEPARTMENT OF HAWAIIAN |
| Debtor. | ) HOME LANDS' POSITION |
| | ) STATEMENT REGARDING |
| | ) MOTION BY HAWAIIAN |
| | ) TELCOM, INC. FOR INTERIM |

|                                                          | ) | AND FINAL RELIEF ENFORCING |
|---|---|---|
|                                                          | ) | THE COURT'S SALE ORDER |
|                                                          | ) |  |
|                                                          | ) |  |
|                                                          | ) | <u>Final Hearing</u> |
|                                                          | ) | Date: April 18, 2022 |
|                                                          | ) | Time: 2:00 p.m. |
|                                                          | ) | Judge: Hon. Robert J. Faris |
|                                                          | ) |  |
|                                                          | ) | [Related Docket Entry: Dkt. #637] |
|                                                          | ) |  |

DEPARTMENT OF HAWAIIAN HOME LANDS' POSITION STATEMENT REGARDING MOTION BY HAWAIIAN TELCOM, INC. FOR INTERIM AND FINAL RELIEF ENFORCING THE COURT'S SALE ORDER

The State of Hawai'i, Department of Hawaiian Home Lands ("DHHL") respectfully submits its position statement regarding the "Motion by Hawaiian Telcom, Inc. for Interim and Final Relief Enforcing the Court's Sale Order" (Dkt. #637)(the "Motion").

In October of last year Hawaiian Telcom, Inc. ("HT") asserted that Sandwich Isles Communications, Inc. ("SIC") and related parties had commenced "a campaign of obstruction, frustration and delay" which impaired HT's ability to efficiently secure, and operate, the Transferred Assets. (Dkt. 459, at 2) Contemporaneously, the Trustee characterized SIC's actions as a "clear and present danger to the operations, safety and security of the Paniolo Cable Network." (Dkt. 425 at 12-13). As detailed in the pending Motion, the concerns that were first articulated last year have now matured into a rolling battle for

physical control of key components of the Transferred Assets which are located on lands owned by DHHL.

As HT correctly points out in the Motion, to the extent that SIC held any rights in the Transferred Assets, or the premises on which the Transferred Assets are located, those rights were definitively extinguished and terminated by the Marshal Sale and the 363 Sale. SIC has no existing rights under License Agreement No. 372 ("License 372") that would permit it to contravene this Court's prior orders and interfere with HT's access to, and operation of, the Transferred Assets.

DHHL has previously informed SIC that License 372 does not afford Waimana Enterprises, Inc. or SIC any rights to limit or restrict HT's access to and use of the Transferred Assets which are located on DHHL lands. Further, DHHL has informed SIC and local law enforcement that HT is responsible for maintaining the security of the Transferred Assets.

## I. BACKGROUND

### A. DHHL Has Authority Over Access to and Uses of the Hawaiian Home Lands

"DHHL is responsible for managing the Hawaiian home lands for the benefit of native Hawaiians under the Hawaiian Homes Commission Act of 1920, as amended. Thousands of families reside on the Hawaiian home lands, which are

comprised of approximately 203,000 acres[.]" *In re Connect America Fund; Sandwich Isles Communications, Inc.*, Federal Communications Commission, WC Docket No. 10-90; CC Docket No. 96-45 (FCC 17-85, July 3, 2017). "Pursuant to the HHCA, DHHL has authority over access to and uses of the Hawaiian home lands, including authority to grant licenses as easements for telephone lines." *Id.* (internal punctuation omitted); *accord* HHCA Sec. 207(c)(1)(A) (authorizing licenses for railroads, telephone lines, electric power and light lines, gas mains, and the like). Licenses issued under HHCA Sec. 207(c) "shall be subject to such terms, conditions, and restrictions as the department shall determine and shall not restrict the areas required by the department in carrying on its duties, nor interfere in any way with the department's operation or maintenance activities." HHCA Sec. 207(c)(3).

## B.   SIC's Telecommunications Assets Were Comprehensively Encumbered by RUS' Mortgage

"SIC was formed in the mid-1990s to provide telecommunications services to native Hawaiians. SIC is a wholly-owned subsidiary of Waimana Enterprises[.]" *Sandwich Isles Communications, Inc. v. United States*, 992 F.3d 1355,1358 (2021). On May 9, 1995 DHHL issued License Agreement No. 372 to Waimana Enterprises, Incorporated. *In re Connect America Fund; Sandwich Isles Communications, Inc.*, Federal Communications Commission, WC Docket No. 10-

90; CC Docket No. 96-45, *1, n.1 (FCC 17-85, July 3, 2017)[1]. "In 1996, DHHL granted a partial assignment of the Exclusive License to" SIC. *Id.* The partial assignment covered all rights, title and interest to provide intralata and intrastate telecommunications services. *Id.*

"In 1997, SIC was designated as an eligible telecommunications carrier to provide service to customers in the Hawaiian home lands[.]" *Sandwich Isles Communications, Inc. v. United States*, 992 F.3d at 1358. SIC received substantial loans from the Rural Utilities Service, a Federal agency. Those loans "were secured by a March 2, 1998 Mortgage, Security Agreement and Financing Statement" which comprehensively encumbered all of SIC's "right, title and interest" in and to all:

> buildings, plants, works, **improvements, structures**, estates, grants, franchises, **easements, rights, privileges and properties real, personal and mixed**, tangible or intangible, of every kind or description, now owned or leased by [SIC] or which may hereafter be **owned or leased, constructed or acquired by [SIC], wherever located**, and in and to all extensions and improvements thereof and additions thereto, including all buildings, plants, works, structures, improvements, fixtures, apparatus, materials, supplies, machinery, tools, implements, poles, posts, crossarms, conduits, ducts, lines, whether underground or overhead or otherwise, wires, cables, exchanges, switches including, without limitation, host switches and remote switches, desks, testboards, frames, racks, motors, generators, batteries and other items of central office equipment, pay stations, protectors, instruments, connections and appliances, office furniture

---

[1] State of Hawaii, Department of Hawaiian Home Lands License Agreement No. 372 is a public record which is available at: https://dhhl.hawaii.gov/wp-content/uploads/2022/01/DHHL-License-No.-372.pdf (last accessed on April 11, 2022).

and equipment, work equipment a**nd any and all other property of every kind, nature and description, used, useful or acquired for use by [SIC.]**

*In re Paniolo Cable Co., LLC*, No. CV 21-00499 JMS-WRP, 2022 WL 625149, at *1 (D. Haw. Mar. 3, 2022)(emphasis added). The collateral for the RUS Mortgage also included "grants, privileges, rights of way and easements … all licenses … privileges and permits … and all other property real or personal, tangible or intangible". *Id.*

### C. SIC Incurred Significant Regulatory and Civil Liability; SIC's Debts Exceed its Assets and it Has No Equity in the Assets it Still Possesses

In July of 2015 the "manager of SIC and its parent company, Waimana – was convicted of violating the tax code." *Sandwich Isles Communications, Inc. v. United States*, 992 F.3d. at 1359. Specifically, the manager "was found guilty of improperly categorizing certain personal expenses as business expenses[.]" *Id.* "Waimana paid $4,063,294.39 of [the manager's] personal expenses, which he improperly designated as business expenses." *Id.* These expenses included "personal massages, college tuition for his children, [and] family vacations to France, Switzerland, Tahiti, Disney World, and the Mauna Lani resort." *Hee v. United States,* 2018 WL 4609932 at *1, (D. Haw. Sept. 25, 2018).

"Shortly after [the] conviction" an "audit revealed that SIC received millions of dollars of USF funds that it should not have received." *Sandwich Isles*

*Communications, Inc. v. United States*, 992 F.3d. at 1359. Following further Federal investigations, "the FCC issued an order finding that SIC improperly received payments in the amount of $27,270,390." *Id.* at 1360. FCC Commissioner's Mignon Clyburn and Ajit Pai described SIC's conduct as being "egregious" and noted that millions of dollars in Federal subsidies "intended to benefit the people of the Hawaiian Homeland … instead lined the pockets of the company's owner." *In the Matter of Sandwich Isles Communications, Inc.*, 31 F.C.C. Rcd. 12999 (2016); *In the Matter of Sandwich Isles Communications, Inc.*, 31 F.C.C. Rcd. 12947 (2016) (describing "SIC's egregious misconduct" and recommending a forfeiture in the amount of $49,598,448); *In the Matter of Sandwich Isles Communications, Inc.*, No. 201732080004, 2020 WL 5905313, at *19 (OHMSV Oct. 1, 2020) (opining that $49 million forfeiture was justified by the "egregious nature and extent of SIC's violations" together with "SIC's, Waimana's and Hee's efforts to conceal the violations" and the "substantial harm" that resulted).

SIC defaulted under the loans made by the Rural Utilities Service and, as a result, SIC "was no longer creditworthy after August 2013". *United States v. Sandwich Isles Communications, Inc.*, 2020 WL 544692, Civ. No. 18-00145 JMS-RT, *5 (D. Haw. Feb. 3, 2020). Subsequently, in 2017 the Federal Communications Commission ("FCC") issued an order determining that all claims

of exclusivity pertaining to License 372 were preempted by Federal law and therefore unenforceable. *In re Connect America Fund; Sandwich Isles Communications, Inc.*, Federal Communications Commission, WC Docket No. 10-90; CC Docket No. 96-45, *12 (FCC 17-85, July 3, 2017).

As a result of SIC's defaults under the RUS loans, on February 18, 2020 "[a] judgment of **$138,557,635.82** was entered in favor of the United States against Sandwich Isles". *In re Paniolo Cable Co., LLC*, No. CV 21-00499 JMS-WRP, 2022 WL 625149, at *1 (D. Haw. Mar. 3, 2022). The Federal District Court concluded last month that "[i]t is [now] undisputed that the assets of Sandwich Isles are insufficient to satisfy that Judgment." *Id.* This fact, coupled with the fact that RUS has already levied on all SIC's assets, means that SIC "has no remaining equity in the property." *Id.* at *3.

## II. LICENSE 372 IS NOT EXCLUSIVE, AND DOES NOT GIVE SIC ANY RIGHTS TO INTERFERE WITH HT'S ACCESS TO THE TRANSFERRED ASSETS

SIC, and those who purport to speak on its behalf, have claimed that the Transferred Assets are located on "real estate granted to Waimana/SIC" and that HT did not "acquire a right to access SIC's real estate." (Dkt. 638-34 – 638-37, Exhibits Y-34 to Y-37 to the Declaration of Daniel Masutomi in Support of Motion by Hawaiian Telcom, Inc. for Interim and Final Relief Enforcing the Court's Sale Order).

SIC's allegations are not correct for several reasons. As HT correctly notes, the Marshal Sale divested SIC of any interest in the central offices and terminal buildings that were listed on Schedule A.2. In addition to conveying the structures, the Marshal Sale also expressly encapsulated "access rights to the land on which" each central office or terminal building was located. The Marshal Sale also expressly divested SIC of "Other Related Assets" that were detailed on Schedule A.2 including, "SIC's interest in License Agreement No. 372[2]" and a broad catch-all provision which encompassed SIC's interests in any and all "easements", "license agreements", "permits", "rights of way or rights of interest, necessary to … repair, maintain and operate the Schedule A.2 assets." *Certificate of Execution*; Dkt 37, at 15.

If there was any doubt as to the scope or effect of the extinguishment of SIC's rights, that was conclusively resolved by the Court's confirmation of the Marshal Sale. The Court ordered that "[SIC] and all persons claiming an interest in the Property, by or through [SIC] … are **forever barred** and foreclosed of and from all right, title and interest … in and to the **Property and every part thereof**". *Order Confirming Sale*; Dkt. 65, at 4 (emphasis added).

---

[2] SIC's interest in License 372 for assets and premises other than those at issue in this matter remains intact, though it is entirely encumbered by RUS' prior execution and SIC has no equity therein.

The Transferred Assets that were purchased by HT included all ten of the central offices and terminal buildings together with associated "access rights" (as to the A.1 Assets) and "easements, rights of way, licenses … and the like, as are required for ingress, egress and access" (as to the A.2 Assets). Dkt. 366-1 (Ex. A to the 363 Sale Order). The 363 Sale Order confirmed that the Transferred Assets were sold "free and clear of all Interests and Claims." *363 Sale Order*, Par. T. (Dkt #366, at 18)

Aside from the fact that all of SIC's rights, title and interests in and to the Transferred Assets were terminated by this Court, SIC's claim to continuing exclusivity rights under License 372 independently fails as a matter of Federal law. In 2017, the FCC expressly ruled that the exclusivity provisions of License 372 violated Section 253 of the Communications Act, 47 U.S.C. § 151 et seq., and were accordingly preempted and non-enforceable under Section 253(d) of the Act. *In re Connect America Fund; Sandwich Isles Communications, Inc.*, Federal Communications Commission, WC Docket No. 10-90; CC Docket No. 96-45 (FCC 17-85, July 3, 2017). . As stated by the FCC:

> [W]e find that an exclusive license to "build, construct, repair, maintain, and operate" a network to provide telecommunications services that was granted by the State of Hawaii, Department of Hawaiian Home Lands . . . to Waimana Enterprises, Inc. . . . and then assigned to its subsidiary, Sandwich Isles Communications, Inc. . . . violates Section 253 of the Communications Act . . . we

preempt enforcement of its exclusivity provision
pursuant to 253(d) of the Act.

*Id*.

As a result of the regulatory termination of the exclusivity provisions, License 372 is now a non-exclusive license. In its discretion, DHHL has allowed, and will continue to allow, other telecommunications providers entry on, across, and under DHHL lands for such purposes as deemed necessary and appropriate, including the provision of last-mile telecommunications services to DHHL facilities, beneficiaries, and lessees. The existence of License 372 does not afford SIC or SIC's affiliates any rights to limit or restrict HT's access to and use of the Transferred Assets. Furthermore, as a matter of law, SIC is absolutely prohibited from utilizing License 372 to interfere with DHHL's operations. HHCA Sec. 207(c)(3). Those operations would include granting licenses to other telecommunications providers.

## III.  CONCLUSION

SIC has nearly $400 million in judgments against it. Its assets have been levied on by the United States and a Federal court has concluded that SIC's assets are insufficient to satisfy its debts. The FCC has imposed a fine of $49 million against SIC, Waimana and its former principal for conduct described as egregious, and willful. As noted by the former Chairman of the FCC, "[t]he American

people, and particularly those living in the Hawaiian Homelands, deserve better." *In the Matter of Sandwich Isles Communications, Inc., Waimana Enterprises, Inc.*, No. 201732080004, 2020 WL 5905313, at *24 (OHMSV Oct. 1, 2020).

As a result of this Court's prior orders, SIC and its affiliates have no rights, title, or interests in or to the Transferred Assets, which specifically include the central offices located in Anahola, Waiehu, Laiopua, and Hilo, the terminal buildings located in Kekaha, Nanakuli, Waimanalo, Kalamaula, Puunene, and Puukapu, and the access rights associated with each of those facilities. SIC's efforts to interfere in HT's use and operation of the Transferred Assets are wrongful, violate Federal law, frustrate the operations of DHHL, jeopardize the continuity of vital services to DHHL's beneficiaries, and contravene this Court's prior orders.

DATED: Honolulu, Hawai'i, April 11, 2022.

>HOLLY T. SHIKADA
>Attorney General, State of Hawaii
>
>CRAIG Y. IHA
>RYAN K.P. KANAKAOLE
>ALYSSA-MARIE Y. KAU
>
>   /s/ Kevin W. Herring
>KEVIN W. HERRING
>Attorneys for the Department of Hawaiian
> Home Lands, State of Hawai'i