MEHEULA LAW, LLLC
A Limited Liability Law Company

WILLIAM MEHEULA        (2277)
D. KAENA HOROWITZ      (9836)
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 2900
Honolulu, Hawai'i 96813
Telephone: (808) 599-9554
bill@meheulalaw.com; kaena@meheulalaw.com

Attorneys for WAIMANA ENTERPRISES INC.

# UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF HAWAI'I

| In re | Case No. 18-01319 (Chapter 11) |
|---|---|
| PANIOLO CABLE COMPANY, LLC, Debtor. | REPLY MEMORANDUM IN SUPPORT OF WAIMANA ENTERPRISES INC.'S MOTION FOR RECONSIDERATION OF FINDINGS OF FACT OF THE COURT'S ORDER GRANTING FINAL RELIEF IN CONNECTION WITH MOTION BY HAWAIIAN TELCOM, INC. ENFORCING THE COURT'S SALE ORDER FILED MAY 17, 2022 [ECF NO. 729], FILED MAY 27, 2022 [DKT. 740]; EXHIBIT A<br><br>Hearing:<br>Date: Monday, August 1, 2022<br>Time: 9:30 a.m.<br>Judge: The Honorable Robert J. Faris |

REPLY MEMORANDUM IN SUPPORT OF WAIMANA ENTERPRISES
INC.'S MOTION FOR RECONSIDERATION OF FINDINGS OF
FACT OF THE COURT'S ORDER GRANTING FINAL RELIEF
IN CONNECTION WITH MOTION BY HAWAIIAN
TELCOM, INC. ENFORCING THE COURT'S SALE ORDER FILED
MAY 17, 2022 [ECF NO. 729], FILED MAY 27, 2022 [DKT. 740]

HTI's Opposition at 5 [Dkt #759] correctly notes that "the need to correct clear or manifest error in law or fact, to prevent manifest injustice" is grounds for reconsideration. In addition, a Court's failure to address the merits of an argument raised previously creates a "need to correct clear error or prevent manifest injustice," per *Nat'l Union Fire Ins. Co. v. Am. Eurocopter Corp.*, No. 09-00136 DAE-LEK, 2009 U.S. Dist. LEXIS 99491, at *4 (D. Haw. Oct. 26, 2009). See also *Pitts v. Espinda*, No. 15-00483 JMS-KJM, 2016 U.S. Dist. LEXIS 202256 at *6 (D. Haw. July 21, 2016) (citations omitted).

Here, the clear and manifest error is that HTI never addressed, and the Court never determined:

(a) assuming the Trustee acknowledged in Schedule 2, section 2.3 of the MRA that he never obtained SIC's interest in License 372, how was he able to transfer *"exclusive control and ownership over the Paniolo Buildings, as well as rights of access to, the entirety of the Paniolo Buildings"* as stated FOF ¶ F and *"exclusive ability to control and maintain security for and over the entirety of the Paniolo Network, the Paniolo Buildings, and the Paniolo Premises"* as stated in FOF ¶ H; and

(b) assuming Waimana, Pa Makani, and Clearcom's ("**Plaintiffs**") commitment in the 9019 Settlement Agreement to provide access to Transferred Assets and Equipment and to cooperate with any purchaser in transferring such assets to the purchaser and trustee as assignee ("**SIC Affiliates' Commitment**")[1] s not enforceable in light of HTI not assuming the MRA and cancellation of the MRA, , what grounds is there to find that Plaintiffs are *"prohibited from charging HTI any fees for accessing or using any assets that permit operation of the Paniolo Network, including, without limitation, the Paniolo Buildings and Paniolo Premises, and HTI is not required to pay any such fees"*, as stated in FOF ¶ G as the Trustee never obtained anything from Plaintiffs except the now unenforceable SIC Affiliates' Commitment.

HTI continues to argue that these issues were decided in the Marshal Sale Order and the 363 Sale Order; but HTI and the Court have not addressed these issues that were raised in SIC's Opposition to the Motion for Final Relief [Dkt #713].

I. **Procedural History**

On February 4, 2020, Katzenstein filed a Notice of Execution in Case No. 19-90022 (Dkt 36), which identified levied SIC property described in Exhibit "A"

---

[1] Note that in the 9019 Settlement Agreement that SIC Affiliates never transferred or waived any of its License 372 rights.

2

as **Real Property**, which is real property in Mililani on Oahu; and **Schedule A-2 Assets**, which are SIC assets used to operate the Paniolo Network; but no other SIC assets, (collectively, "**SIC Property**").

Schedule A-2 lists SIC central stations and related assets, and at the end of the section entitled "Licenses" stated:

> -All licenses necessary to build, construct, repair, maintain and operate the Schedule A.2 assets, including without limitation <u>SIC's interest in License Agreement No. 372 issued by the State of Hawaii Department of Hawaiian Home Lands</u>.
>
> -All existing and pending entitlements (including without limitation, SIC's interests in memoranda of agreement, <u>easements</u>, leases, <u>license agreements</u>, letters of approval, special area management permits, rights of way or rights of interest, necessary to build, construct, repair, maintain and operate the Schedule A.2 assets.

Emphases added.

On March 6, 2020, pursuant to the Writ of Execution, the Trustee at a public auction purchased the SIC Property.[2]

On March 16, 2020, the Court approved the Marshal Sale ("**Marshal Sale Order**").

By order dated June 4, 2020, the Bankruptcy Court approved the Rule 9019 Settlement Agreement, effective as of <u>March 6, 2020</u>; which included approval of

---

[2] The Marshal Sale Order states that the Marshal Sale was conducted on March 6, 2020 at noon. However, the 363 Sale Order erroneous states that the Marshal Sale occurred on March 4, 2020.

3

the Master Relationship Agreement ("**MRA**") dated March 6, 2020, also effective March 6, 2020. The MRA attached Schedule A-2.

The MRA was an agreement, between the Trustee and SIC, where: (1) SIC leased from Paniolo use of its undersea fiber cables; and (2) SIC allowed Paniolo to use its License 372 easement areas and premises. Schedule 2, section 2.3 of the MRA states:

> **2.3. Entitlements.** The Parties acknowledge and agree that: (a) that certain Department of Hawaiian Home Lands License Agreement No. 372 ("DHHL License"), together with (b) the easements, leases, license agreements, letters of approval, special area management permits, rights of way or rights of entry granted to SIC or an SIC Affiliate and identified on Exhibit B hereto (the "Entitlements") are necessary for the operation and maintenance of the Paniolo Network (or were necessary for the construction of the Paniolo Network). <u>SIC hereby agrees to assign, transfer, or convey to Paniolo all Entitlements **(other than the DHHL License)** that may by their terms be so assigned or transferred and to the extent such assignment, transfer, or conveyance would not, in Paniolo's reasonable judgment, adversely affect service in the Hawaiian Home Lands.</u> <u>To the extent any Entitlement may not, by its terms, be so assigned or transferred, SIC shall (i) sublease or sublicense (as applicable) the Entitlement to Paniolo; or (ii) grant to Paniolo the broadest possible right to use the Entitlement.</u> For the avoidance of doubt, <u>the Parties acknowledge and agree that **DHHL License will not be assigned by SIC to Paniolo**, but that SIC shall, and hereby does, grant to Paniolo the full benefit and use of the DHHL License for the IRU Term provided Paniolo does not exercise its rights under such grant to impair service to HHL</u>.

Emphases added. Thus, the Trustee in the MRA understood that SIC could not assign its rights under License 372 without DHHL's consent, which is

4

understandable since DHHL consented to Waimana's partial assignments to SIC, Pa Makani, and Clearcom. and Section 6 of License 372 states:

> 13. ASSIGNMENTS. Except as expressly provided in this LICENSE, this LICENSE is not transferable. At no time during the term of this LICENSE, shall LICENSEE assign, mortgage or pledge its interest in this LICENSE or its interest in the improvements now or hereafter erected on the premise without the prior written consent of LICENSOR, which consent will not be withheld unreasonably.

Because the 9019 Settlement Agreement and the MRA were effective on the date of the Marshal Sale, on March 6, 2020; and the Trustee never obtain SIC's interest in License 372, which the Trustee acknowledged in the MRA.

As consideration for the MRA, in the 9019 Settlement Agreement, Waimana, Pa Makani and Clearcom agreed to:

> (h) The Parties agree that, subject to Bankruptcy Court approval, the Paniolo Trustee will conduct a sales process for the Paniolo 363 Sale, including assumption and assignment of executory contracts and nonresidential releases pursuant to orders of the Bankruptcy Court governing procedures and deadlines, of substantially all of Paniolo's assets. The SIC Parties expressly agree not to object (or cause or encourage any other party to object) to entry of such orders or to the rights of any secured creditor of Paniolo to credit bid and shall waive any rights to appeal such orders. <u>The SIC Parties expressly agree and covenant to provide all access to such assets and to exercise best efforts to cooperate with the purchaser and assignee under Paniolo 363 Sale in the orderly transfer of such assets to such purchaser and assignee. Any purchaser or assignee approved by the Court shall be bound by the terms of the Master Relationship Agreement.</u>

Order granting Rule 9019 Settlement Agreement at 6 [Dkt #271], emphasis added.

5

On December 28, 2020, the Court entered the **363 Sale Order**, which states in part of sections iv and 39:

> As more fully set forth in the [9019] Settlement Agreement, the Settlement Parties made certain representations and warranties (the "Settlement Agreement Representations") and covenants (the "Settlement Agreement Covenants") which included, among other things, the duty to cooperate further with the Debtor with respect to the US Marshal Sale, the transfer of the Assets and rights transferred therein, and any proposed sale by Debtor to Buyer herein.
>
> iv. In connection with the Settlement Agreement, Debtor and SIC entered into that certain Master Relationship Agreement and its Schedules and Exhibits, as of March 6, 2020, the (collectively, the "MRA"), pursuant to which the Debtor and SIC rearranged their business affairs among themselves.
>
> 39. All persons or entities that are currently in possession of some or all of the Transferred Assets in contravention of the US Marshal Sale, the Settlement Agreement or MRA, including for the avoidance of doubt, SIC and SIC's Affiliates or any person or entity claiming by or through SIC or SIC's Affiliates, are hereby directed to surrender possession of the Transferred Assets except as Debtor and Buyer may otherwise agree.

Emphases added.

On November 15, 2021, the Trustee filed a Declaration [Dkt #21-90017, 19-3] where he alleged SIC defaulted under the MRA and the 9019 Settlement Agreement; and that HTI did not assumed the MRA or the 9019 Settlement Agreement.

On November 19, 2021, the Court entered an Order that stated:

> [A]lthough the record is clear that the trustee acquired certain "central offices" and "terminal buildings" by virtue of the execution sale, it is

6

not clear that the Trustee acquired *exclusive* rights of occupancy. After all, SIC's above-water system is still connected to Paniolo's submarine system in those buildings. Third, it is not clear what contract or arrangement currently governs the relationship between Hawaiian Telcom and SIC. The Master Relationship Agreement and related agreements clarified the situation, but Hawaiian Telcom chose not to acquire the Master Relationship Agreement or the related agreements.

Accordingly, nothing in the Marshal Sale Order or the 363 Sale Order invalidated the Trustee's acknowledgement in Schedule 2, section 2.3 of the MRA that the DHHL License was not assigned by SIC to Paniolo. In fact, the 363 Sale Order determined the scope of the Transferred Assets in accordance with the MRA. The fact that the Trustee terminated the MRA does not eliminate the acknowledgement in Schedule 2, section 2.3. To the contrary, termination only means that the Trustee no longer has the right set forth in the MRA and 9019 Settlement Agreement to transfer to HTI; and, regardless, HTI did not assume those agreements.

In the Final Relief Order, the Court was lead by HTI to focus on the catchall provisions such as the Marshal Sale Order at ¶¶ 6-7 and the 363 Sale Order at ¶¶ 10 and 39, see Final Relief Motion at 12, 17, without addressing the MRA and Settlement Agreement sections of the 363 Sale Order, referenced above.

On May 2, 2022, SIC filed its Opposition to the Motion for Final Relief where, at 12-14 [Dkt #713], where it raised the MRA and 9019 Settlement

7

Agreement arguments.  Waimano joined [Dkt #715] and Clearcom joined [Dkt #720].

On May 9, 2022, HTI filed its Reply to the Final Relief Motion [Dkt #721], which argued the Marshal Sale Order was entered without any reference to any limitation by the MRA or the 9019 Settlement Agreement, *ignoring* that they were subsequently approved effective as of the date of the Marshal Sale on March 6, 2020; *and* that the 363 Sale Order referenced the MRA and 9019 Settlement Agreement as bases for rights to be transferred.

**Findings Of Fact ("FOF") F, G And H Are Inconsistent with the MRA And Settlement Agreement**

FOF ¶ F states:

F. Through the Marshal Sale (defined at ECF No. 637-1 at 4 of 59) and the 363 Sale (id.), HTI has <u>properly acquired the entirety of the Paniolo Buildings</u> (defined at ECF No. 637 at 4-5 of 8), and thus <u>now holds exclusive control and ownership over, as well as rights of access to, the entirety of the Paniolo Buildings</u>.

Emphases added.  ECF No. 637 at 4-5 of 8 listed 10 central offices and terminal buildings that are listed in Schedule A-2.  Because License 372 was not transferred to the Trustee – without a use agreement from SIC, Waimana, Pa Makani, and Clearcom or a license from DHHL for the License 372 easement areas and premises (which would be a breach of License 372 and the likely reason DHHL has not yet entered into a license with HTI, as alleged Plaintiffs and SIC's First Amended Complaint against DHHL filed on July 19, 2022 in 1CCV-22-0000617,

8

attached hereto without exhibits as Exhibit A. However, for purposes of this Motion, DHHL's position statements are not relevant because DHHL was not a party to the MRA or the 9019 Settlement Agreement.

FOF ¶ G states:

> Through the Marshal Sale and the 363 Sale, HTI has properly acquired the assets that permit operation of the Paniolo Network (defined at ECF No. 637-1 at 11 of 59), including, without limitation, <u>full rights of access to the Paniolo Premises, including those certain portions of the 372 License (defined at ECF No. 637-1 at 8-9 of 59)</u> pertaining to the Paniolo Network and/or the Paniolo Premises that were formerly held by SIC. <u>SIC, Waimana Enterprises, Inc., Pa Makani LLC, Clearcom, Inc., all affiliates</u> thereof, as well as all members of the Hee family and all other individuals who have authority or de facto control over any of these entities (collectively, the "SIC Parties")2 <u>are thus prohibited from charging HTI any fees for accessing or using any assets that permit operation of the Paniolo Network, including, without limitation, the Paniolo Buildings and Paniolo Premises, and HTI is not required to pay any such fees.</u>

"Paniolo Premises" is defined as "Paniolo Buildings and on the easement areas surrounding the Paniolo Buildings". Again, the easement areas to the Paniolo Buildings are covered by the License 372 Easement, which the Trustee acknowledged were not transferred to him.

Furthermore, HTI cannot enforce the SIC Affiliates' commitments in the 9019 Settlement Agreement to provide access to the Transferred Assets and Equipment because said commitments were made in reliance on the Trustee entering into the MRA and committing that the assignor would be bound by the MRA, which did not happen.

9

U.S. Bankruptcy Court - Hawaii    #18-01319    Dkt # 772    Filed 07/25/22    Page 10 of 11

FOF ¶ H states:

> Through the Marshal Sale and the 363 Sale, including HTI's acquisition of the perimeter fences surrounding the Paniolo Premises and its the acquisition of all keys relating to the Paniolo Buildings and Paniolo Premises, HTI has acquired the <u>exclusive ability to control and maintain security for and over the entirety of the</u> Paniolo Network, <u>the Paniolo Buildings, and the Paniolo Premises</u>.

Emphases added. This is HTI's circular argument to avoid addressing the effect of HTI not assuming the MRA and 9019 Settlement Agreement.

Reconsideration should be granted and these issues should be resolved by litigation on the First Amended Complaint in Adversary Proceeding 22-90008 [Dkt #28].

DATED: Honolulu, Hawaiʻi, July 25, 2022.

*/s/ William Meheula*
WILLIAM MEHEULA
D. KAENA HOROWITZ

Attorneys for WAIMANA ENTERPRISES INC.

10