MEHEULA LAW, LLLC
A Limited Liability Law Company

WILLIAM MEHEULA          (2277)
D. KAENA HOROWITZ        (9836)
Pacific Guardian Center, Makai Tower
733 Bishop Street, Suite 2900
Honolulu, Hawai'i 96813
Telephone: (808) 599-9554
bill@meheulalaw.com; kaena@meheulalaw.com

Attorneys for Plaintiffs
WAIMANA ENTERPRISES INC., SANDWICH ISLES
COMMUNICATIONS, INC., PA MAKANI LLC
and CLEARCOM, INC.

Electronically Filed
FIRST CIRCUIT
1CCV-22-0000617
19-JUL-2022
10:48 AM
Dkt. 11 CAMD

IN THE CIRCUIT COURT OF THE FIRST CIRCUIT

STATE OF HAWAI'I

| | |
|---|---|
| WAIMANA ENTERPRISES INC., SANDWICH ISLES COMMUNICATIONS, INC., PA MAKANI LLC, and CLEARCOM, INC.,<br><br>Plaintiffs,<br><br>vs.<br><br>DEPARTMENT OF HAWAIIAN HOME LANDS, HAWAIIAN HOMES COMMISSION; HAWAIIAN HOMES COMMISSION TRUSTEES WILLIAM J. AILA, JR., PATRICIA KAHANAMOKU-TERUYA, RUSSELL KAUPU, RANDY AWO, PAULINE NAMU`O, ZACHERY HELM, DENNIS NEVES, MICHAEL KALEIKINI, DAVID B. KA`APU, IN THEIR OFFICIAL CAPACITY;<br><br>Defendants. | CIVIL NO. 1CCV-22-0000617 (DEO)<br>(Other Civil Action)<br><br>FIRST AMENDED COMPLAINT; EXHIBITS "A" – "I"; SUMMONS |

# EXHIBIT A

FIRST AMENDED COMPLAINT

Plaintiffs Waimana Enterprises Incorporated ("**Waimana**"), Sandwich Isles Communications, Inc. ("**SIC**"), Pa Makani LLC ("**Pa Makani**") and Clearcom, Inc. ("**Clearcom**") for their Complaint against Defendant Department of Hawaiian Home Lands ("**DHHL**"), Hawaiian Homes Commission ("**HHC**"); Hawaiiian Homes Commission Trustees William J. Aila, Jr., Patricia Kahanamoku-Teruya, Russell Kaupu, Randy Awo, Pauline Namu`O, Zachery Helm, Dennis Neves, Michael Kaleikini, David B. Ka`Apu, In Their Official Capacity ("**Trustees**") allege and aver as follows.

1. In 1995, Waimana a native Hawaiian corporation became the holder of License 372 that requires Waimana to develop all telecommunications infrastructure necessary and provide modern telecommunications services on Hawaiian Home Lands ("**HHL**") at no cost to DHHL or the homesteaders, no matter how remote their residence may be. Prior to 372, DHHL had to pay for the development of all telecommunications infrastructure on HHL then allow Hawaiian Telephone (now HTI) to exclusively use the infrastructure for free. Hawaiian Telephone, with the Public Utilities Commission's ("**PUC**") knowledge and consent[1], would then deliver a lesser level of voice service than they provided to its customers in Honolulu. DHHL could not obtain the State funds[2] necessary to develop telecommunications infrastructure or to deliver telecommunications services better than Hawaiian Telephone offered. This resulted in homesteaders receiving lesser or no service. The inability to call for help in an emergency prevented the development of the remote areas of HHL for homesteading.

---

[1] The PUC approved a two-tiered level of telephone service. HHL was in the second tier.

[2] As part of Hawaii's Statehood Act, Congress required inclusion of the Hawaiian Homes Commission Act ("**HHCA**") as part of Hawaii's Constitution and required the State to provide the necessary funds.

Waimana's plan was to initially use U.S. Department of Agriculture, Rural Utilities Service ("**RUS**") loans to pay for the infrastructure[3]. To qualify for the loans, RUS required DHHL issue a license with the specific provisions[4] included in License 372. The term of the license, perpetuity, is the same as other licenses DHHL issued to other utilities. License 372 also mandates that no matter how expensive the infrastructure may be in order to provide such service, the monthly charge to the customer will be no more than is charged for comparable service in the adjacent non-HHL areas[5]. The provisions in License 372 are the reason that 27 years later, the thousands of homesteaders and business on the HHL have modern telecommunication service, including in many cases fiber-optic cable to their homes. License 372 made it possible for homesteaders on Molokai to be connected by undersea cable with the same capacity as the other islands.[6] It is essential to sustaining, expanding and upgrading telecommunications service to the HHL homesteaders in the future that the requirements of License 372 be continued.

Since the issuance of License 372, telecommunications services and regulations have changed. Like the airline industry, telecommunications is now deregulated. There are no longer regulations requiring a carrier to provide service[7]. Just as the deregulation of the airlines resulted in the rural airports no longer being served, the deregulation of telecommunications is having

---

[3] Hawaiian Telephone used RUS loans to fund the development of telecommunications infrastructure in Saipan but would not do the same in Hawaii.

[4] License 372 also includes terms that are not required by RUS but are beneficial to homesteaders such as an education fund and preference in hiring.

[5] This condition insured the homesteaders would be charged the same fees as when DHHL funded the infrastructure and gave exclusive use to Hawaiian Telephone.

[6] Hawaiian Telephone bypassed Molokai when it developed its undersea cable.

[7] Prior to the 1995 Telecommunications Act, Hawaiian Telephone was required to provide service to everyone. However, the PUC did not enforce that requirement on HHL.

3

similar results. Carriers only serve customers that are profitable. License 372 requires serving all of HHL. At the same time, telecommunications is quickly becoming a necessary part of life. Previously, voice services were important for safety, now the internet is required for medical, education, government services etc. Termination or non-enforcement of License 372 will return HHL homesteaders to the same situation that existed in 1990. DHHL will not develop its rural properties once again because the State cannot afford to meet its funding obligations in the HHCA. Potential homesteaders will once again die on the wait list or settle for undeveloped homesteads with no services. In the first 20 years, License 372 has been responsible for over $400 million in telecommunications infrastructure being built to benefit homesteaders. HHCA beneficiaries will be unable to be fully participating residents of Hawai'i.

Waimana's long term plan was to lease the infrastructure on License 372 properties to carriers who would lease the infrastructure rather than build new infrastructure to serve the entire state of Hawai'i. The lease revenues would be enough to continue to meet its obligations to benefit homesteaders. Waimana assigned to wholly owned subsidiaries portions of 372 to provide the different types of telecommunications services; voice, data, wireless however, maintained control of the land rights to ensure the 372 properties were efficiently used to provide all types of telecommunications. DHHL's breach of License 372 have resulted in Waimana or its assigned licensees not being able to charge HTI for use of its license easement areas and premises to pay for these beneficiary benefits. DHHL's breach of License 372 is resulting in HTI making more profits without any obligations contained in License 372.[8] More egregious is DHHL's breach allows HTI to use HHL to terminate service to homesteaders. The damage to

---

[8] HTI is building its statewide "fioptics" network from infrastructure located on License 372 properties on each island.

4

generations of homesteader not having adequate telecommunications is unknown. As noted below, DHHL has breached License 372 and fiduciary duties, but it is not too late for beneficiaries to work together again.

2. Plaintiff Waimana is a corporation organized and existing under the laws of the State of Hawaiʻi.

3. Plaintiff Pa Makani is a limited liability company organized and existing under the laws of the State of Hawaiʻi.

4. Plaintiff Clearcom is a corporation organized and existing under the laws of the State of Hawaiʻi.

5. Plaintiff Sandwich Isles Communications is a corporation organized and existing under the laws of the State of Hawaiʻi.

6. Defendant DHHL is an agency of the State of Hawaiʻi organized under the Constitution and laws of the State of Hawaiʻi.

7. Pursuant to section 202, Hawaiian Homes Commission Act ("**HHCA**"), DHHL is headed by Defendant HHC, whose nine Defendant Trustees are appointed by the Governor with the advice and consent of the Senate. Three of the trustees are residents of the City and County of Honolulu; two are residents of the County of Maui, with one being a resident of the island of Molokaʻi; two are residents of the County of Hawaiʻi, one being a resident of East Hawaiʻi and the other a resident of West Hawaiʻi; one is a resident of the County of Kauaʻi; and the ninth trustee member is the Chairman William A`ila, who is appointed by the Governor from among the members of the Commission. The Chairman of the Commission serves as the full-time administrator of the DHHL.

5

8. HAR §10-2-19 states Duties of commissioners as trustees. As trustees, it shall be the duty of commissioners to:

> (1) Act exclusively in the interest of beneficiaries under the act;
> (2) Hold and protect the trust property for beneficiaries under the act;
> (3) Exercise such care and skill as a person of ordinary prudence would exercise in dealing with one's own property in the management of Hawaiian home lands; and
> (4) Adhere to the terms of the trust as set forth in the act.

9. Plaintiff SIC is a native Hawaiian corporation organized and existing under the laws of the State of Hawaiʻi.

10. Non-party Hawaiian Tel Inc. ("**HTI**") is a corporation organized under the laws of the State of Hawaiʻi.

11. Section 207(c)(1)(A) of the HHCA states: "The department is authorized to <u>grant licenses as easements for</u> railroads, <u>telephone lines</u>, electric power and light lines, gas mains, <u>and the like</u>." Emphasis added.

12. Section 204(2) of the HHCA states "In the management of any retain available lands … the department is expressly authorized to negotiate, prior to negotiations with the general public, the disposition of Hawaiian home lands or any improvement thereon to a native Hawaiian, or organization or associations owned or controlled by native Hawaiians, for commercial, industrial or other business purposes …"

13. Plaintiffs are native Hawaiian organizations as noted in License 372 and the Partial Assignments.

14. Section 206 of the HHCA states:

> "OTHER OFFICERS NOT TO CONTROL HAWAIIAN HOME LANDS; EXCEPTIONS. The powers and duties of the governor … in respect to the lands of the State, shall not extend to lands having the status of Hawaiian home lands, except as specifically provided in this title."

15. The Hawaii Public Utilities Commission ("**PUC**") is a division of the Governor's administration and therefore has no authority on HHL.

16. Waimana is the owner and holder of License No. 372 issued by the State of Hawaii Department of Hawaiian Home Lands ("**DHHL**") pursuant to authorization from the HHC (hereinafter "**License 372**"). A true copy of License 372 is attached hereto as **Exhibit "A"** and incorporated herein by this reference.

17. License 372 granted Waimana a right to provide "telecommunication services of all types" to HHL, see Exhibit A at 1:

> Licensor determines that the LICENSE established herein is essential in order to provide broad band telecommunication services of all types (including but not limited to <u>local, intrastate, interstate and international telephone</u>; video on demand interactive communication; cable television; medical and educational links; and electronic data transmission) <u>to LICENSOR'S lands</u> in a timely manner;

The added underscored words identify the type and area of telecommunication services assigned to SIC in the Partial Assignment of License, discussed below. The right to provide all other types of telecommunication services were retained by Waimana.

18. Under HHCA 207(c)(1), License 372 is an interest in real property issued to Waimana pursuant to HHCA 207(c)(1) and Hawaii Administrative Rules 10-4-21 and 22.

19. By instrument dated January 15, 1996, Waimana partially assigned License 372 to SIC (the "**SIC Partial Assignment**"). A true copy of the Partial Assignment is attached hereto as **Exhibit "B."** By instrument dated October 6, 2008, the HHC consented to the Partial Assignment. A true copy of the Consent is attached hereto as **Exhibit "C"**.

20. The SIC Partial Assignment is expressly limited to "***IntraLata and Intrastate telecommunication services***", which means "limited to local, intrastate, interstate and international telephone" on HHL ("**voice only service**"). Consistent with that voice only service

7

limitation and area of service limitation, SIC was granted a Certificate of Authority from the Hawaii Public Utilities Commission to provide voice only services on HHL.

21. Waimana caused other subsidiaries including Plaintiffs Clearcom, Inc. and Pa Makani LLC to provide other telecommunications services (internet, wireless etc.) both on and off HHL.

22. By instrument dated December 30, 2011, Waimana partially assigned License 372 to Pa Makani (the "**Pa Makani Partial Assignment**"), which granted "those certain rights, title and interest necessary to provide "*wireless communications services of all types*" under License 372. DHHL consented to the Pa Makani Partial Assignment. A true copy of the Partial Assignment is attached hereto as **Exhibit "D",**

23. By instrument dated May 29, 2014, Waimana partially assigned License 372 to Clearcom (the "**Clearcom Partial Assignment**"), which granted "those certain rights, title and interest necessary to provide "*broadband communications services of all types*" under License 372. DHHL consented to the Clearcom Partial Assignment. A true copy of the Partial Assignment is attached hereto as **Exhibit "E",**

24. License 372 in relevant part also provides:

> LICENSOR determines that the LICENSE established herein is essential in order to provide broad band telecommunication services of all types (including but not limited to local, intrastate, interstate and international telephone; video on demand; interactive communication; cable television; medical and educational links; and electronic data transmission) to LICENSOR'S lands in a timely manner;
>
> FURTHER, LICENSOR determines that the issuance of this LICENSE established herein is essential for LICENSEE to obtain necessary funds needed to construct and operate the necessary telecommunications infrastructure;
>
> LICENSOR believes and intends that the issuance of this Exclusive "Benefit" LICENSE will also fulfill the purpose of advancing the rehabilitation and welfare of native Hawaiians.

NOW THEREFORE, LICENSOR, in consideration of the services to be provided by LICENSEE [Waimana], and the terms, conditions and covenants herein contained on the part of LICENSEE to be kept, observed and performed, hereby grants and issues to LICENSEE, and its legal successors and assigns, the [1] <u>exclusive right and privilege to build, construct, repair, maintain and operate a broad band telecommunications network including poles, overhead and/or underground lines, appliances, microwave and/or other types of equipment over, across, under and throughout all lands under the administration and jurisdiction of LICENSOR</u>, and its legal successors and assigns, including the right to trim and keep trimmed any vegetation, shrubbery, bushes or trees in the way of its lines and appurtenances, and [2] <u>including also the right of entry upon the easement area and adjoining land of LICENSOR for the construction, maintenance, operation and removal of LICENSEE'S line and appurtenances over, across and under the LICENSE area</u>.[9]

TO HAVE AND TO HOLD the same unto LICENSEE, its legal successors and assigns, <u>in perpetuity</u>, commencing on May 1, 1995, unless sooner terminated as hereinafter provided,

    4.    <u>ACCESS TO TELECOMMUNICATIONS INFRASTRUCTURE.</u> LICENSEE shall make available to LICENSOR the use of all available telecommunications equipment and services then under LICENSEE'S control at LICENSEE'S cost. LICENSOR'S use under this paragraph shall be limited to emergency, public and official purposes only.

    5.    <u>LEVEL OF TELECOMMUNICATION SERVICES</u>. LICENSEE shall provide at a minimum the same level of telecommunication service being provided in adjacent areas not subject to this LICENSE. LICENSEE shall use its best effort to provide a higher level of telecommunication service than that being provided in adjacent areas not subject to this LICENSE. LICENSEE shall not provide a lower level of service than that level being provided in adjacent areas not subject to the LICENSE unless LICENSOR shall agree in writing.

    6.    <u>COST OF TELECOMMUNICATIONS SERVICES</u>. LICENSEE shall provide to the beneficiaries of LICENSOR living in areas subject to this LICENSE, telecommunications services at a cost less than or equal to the cost for comparable services being provided in adjacent areas not subject to this LICENSE. LICENSEE shall not charge beneficiaries living in the LICENSE area more for telecommunication

---

[9] Section [1] is the exclusive right to provide telecommunications services throughout HHL that the FCC Order preempted by its Memorandum Opinion and Order dated 7/3/17, where the FCC Order removed the exclusivity aspect of the service right on HHL. ("**License 372 Service Right**").

Section [2] is the License exclusive easement granted by DHHL to Waimana in License 372 for certain areas of HHL, i.e. "the <u>easement area and adjoining land of LICENSOR for the construction, maintenance, operation and removal of LICENSEE'S line and appurtenances over, across and under the LICENSE area</u>." ("**License 372 Easement**").

9

services than being charged in adjacent areas not subject to this LICENSE unless LICENSOR consents in writing.

   7.  <u>JOB TRAINING/EDUCATION</u>. LICENSEE agrees to expend an amount equal to at least one-half percent (1/2%) of LICENSEE'S annual net profit for job training and/or educational opportunities for beneficiaries of LICENSOR each year. For purposes of demonstrating compliance with this paragraph, LICENSEE agrees to allow LICENSOR access to LICENSEE'S financial statement, provided, that all material and information will be kept strictly confidential.

   8.  <u>EMPLOYMENT.</u> LICENSEE agrees to offer employment opportunities to qualified beneficiaries of LICENSOR.

   9.  <u>CAPITAL EXPENDITURES/CONTRACTS.</u> LICENSEE agrees to utilize qualified companies controlled or owned by beneficiaries of LICENSOR provided such beneficiary company is qualified to perform the terms of the contract and such beneficiary company's bid price is not more than 5% higher than the lowest bid from an equally qualified non-beneficiary company.

   19.  <u>BREACH</u>. If LICENSEE shall substantially fail to observe or perform any of the conditions herein contained and on its part to be observed or performed and such failure or lack of substantial compliance shall continue for sixty (60) days after the receipt by certified mail or written notice of such failure to the address of LICENSEE, or if LICENSEE shall abandon the premises, then and in any such event LICENSOR may, at its option, cancel this LICENSE Agreement and, thereupon, take immediate possession of the premises, allowing LICENSEE reasonable time to remove its property therefrom, without prejudice to any remedy or right of action that LICENSOR may have against LICENSEE.[10]

   20.  <u>RIGHT OF ENTRY</u>. LICENSOR and its duly authorized representatives shall have the <u>right to enter the Premises at all times for the purposes of conducting its own inspection and to ensure that LICENSEE is in compliance with the provisions of this LICENSE</u>.

   23.  <u>DEFINITION</u>. The word **"premises"**, when it appears herein, includes and shall be deemed to <u>include the **lands** described above and **improvements** whenever and wherever erected or placed thereon</u>.

25.  Thus, under License 372, once DHHL approves a development plan for certain HHL areas – upon completion of said development, those "lands" and "improvements" become

---

[10] Although DHHL initially sent Waimana and SIC a notice of violation in March 2020 that notice was effectively withdrawn by DHHL in January 2021 when Waimana and SIC requested a contested case hearing, and since then, DHHL has not sent Plaintiffs any such notice of breach.

10

"Premises" and "easement areas" to which Waimana, or its approved assignees, obtain exclusive possession, subject to certain lessor-type of rights such as abandonment, relocation, and/or breach.

26. Based on the provisions in License 372, under Hawaii law, it is more a kin to a lease than a license and regardless is an interest in real property. Kiehm v. Adams, 109 Hawai'i 296, 297, 126 P.3d 339, 340 (2005) ("Whether an agreement is a license or a lease depends on the intention of the parties as ascertained from the nature of the agreement. There are several factors that a court should consider in determining whether an agreement is a lease or a license: (1) most importantly, does the grantee have the right to occupy a distinct and separate part of the premises; (2) is the grantee's right to possession assignable (suggesting a lease) or is it a personal privilege (suggesting a license); and (3) is the agreement for a fixed term (suggesting a lease).") License 372 satisfies the three factors for a lease.

27. Pursuant to License 372, SIC developed telecommunications facilities, including Central Offices, warehouses and security fencing and underground conduits to beneficiary lessee residences on License 372 Easement. SIC used those facilities for the provision of voice only services. Plaintiffs developed other telecommunications facilities.

28. Paniolo Cable Company Inc. ("**Paniolo**") developed and leased to SIC, certain telecommunication facilities (undersea and underground cables and switches) both on and off of HHL which connected various HHL parcels on each Hawaiian island except Lanai. Paniolo's facilities were connected to and housed in existing facilities on License 372 Easement, pursuant to SIC's joint use agreement with Paniolo. All of Paniolo's facilities were leased to SIC at a time when Paniolo was a third-party mainland undersea cable company not owned or controlled by Waimana nor any affiliate of Waimana. Paniolo had no interest in any HHL, as the License

11

372 Easement was licensed to Waimana pursuant to its rights under License 372. The assets owned by Paniolo and leased to SIC including the assets on the License 372 Easement are hereinafter referred to as the "**Paniolo Assets**."

29. In 2018, an involuntary bankruptcy petition was filed against Paniolo and in 2019, the U.S. Bankruptcy Court appointed Michael Katzenstein to serve as the Trustee in Bankruptcy for Paniolo ("**Katzenstein**").

30. Because SIC was delinquent in its rent payments to Paniolo, in 2019, Katzenstein sued SIC and obtained a money judgment against SIC for the amount of unpaid rent that SIC owed to Paniolo.

31. With the money judgment, on February 4, 2020, Katzenstein filed a Notice of Execution in Case No. 19-90022 (Dkt 36), which is attached hereto as **Exhibit "F,"** that identified levied SIC property described in Exhibit "A" as **Real Property**, which is real property in Mililani on Oahu, and **Schedule A-2 Assets**, which are SIC assets used to operate the Paniolo Network but no other SIC assets, (collectively, "**SIC Property**").

32. Schedule A-2 lists SIC central stations and related assets and at the end of the section entitled "Licenses" stated:

> -All licenses necessary to build, construct, repair, maintain and operate the Schedule A.2 assets, including without limitation <u>SIC's interest in License Agreement No. 372 issued by the State of Hawaii Department of Hawaiian Home Lands</u>.
>
> -All existing and pending entitlements (including without limitation, SIC's interests in memoranda of agreement, <u>easements</u>, leases, <u>license agreements</u>, letters of approval, special area management permits, rights of way or rights of interest, necessary to build, construct, repair, maintain and operate the Schedule A.2 assets.

Emphasis added.

33. On March 6, 2020, pursuant to the Writ of Execution, the Trustee at a public auction purchased the SIC Property.

12

34. By order dated June 4, 2020, the Bankruptcy Court approved the Rule 9019 Settlement Agreement effective as of March 6, 2020 31, and that included approval the Master Relationship Agreement ("**MRA**") also effective March 6, 2020, a copy of the MRA is attached hereto as **Exhibit "G."**

35. The MRA was an agreement between the Trustee and SIC where SIC leased from Paniolo use its undersea fiber cable use and SIC allowed Paniolo to use its License 372 easement areas and premises. Schedule 2, section 2.3 of the MRA states:

> **2.3. Entitlements.** The Parties acknowledge and agree that: (a) that certain Department of Hawaiian Home Lands License Agreement No. 372 ("DHHL License"), together with (b) the easements, leases, license agreements, letters of approval, special area management permits, rights of way or rights of entry granted to SIC or an SIC Affiliate and identified on Exhibit B hereto (the "Entitlements") are necessary for the operation and maintenance of the Paniolo Network (or were necessary for the construction of the Paniolo Network). <u>SIC hereby agrees to assign, transfer, or convey to Paniolo all Entitlements **(other than the DHHL License)** that may by their terms be so assigned or transferred and to the extent such assignment, transfer, or conveyance would not, in Paniolo's reasonable judgment, adversely affect service in the Hawaiian Home Lands. To the extent any Entitlement may not, by its terms, be so assigned or transferred, SIC shall (i) sublease or sublicense (as applicable) the Entitlement to Paniolo; or (ii) grant to Paniolo the broadest possible right to use the Entitlement.</u> For the avoidance of doubt, <u>the Parties acknowledge and agree that **DHHL License will not be assigned by SIC to Paniolo**, but that SIC shall, and hereby does, grant to Paniolo the full benefit and use of the DHHL License for the IRU Term provided Paniolo does not exercise its rights under such grant to impair service to HHL</u>.

Emphasis added. Because the 9019 Settlement Agreement and the MRA were effective on the date of the Marshal Sale, the Trustee never obtain SIC's interest in License 372.

36. The MRA served as consideration for the 9019 Settlement Agreement where SIC and its affiliates (Waimana, Pa Makani and Clearcom) agreed that they would not object to the Marshal Sale and would provide access to the Paniolo assets including SIC assets from the Marshal Sale, which as noted above did not include SIC's interests in License 372. The 9019
13

Settlement Agreement also provided that: "Any purchaser or assignee approved by the Court shall be bound by the terms of the MRA."

37. Thereafter, the 9019 Settlement Agreement and MRA were not assumed by HTI, which means in addition to not receiving any SIC interest in License 372, HTI also did not receive Entitlements noted Schedule 2, section 2.3 of the MRA or the agreements made by SIC, and its affiliates in the 9019 Settlement Agreement.[11] HTI gambled that instead of negotiating with Plaintiffs, as the Trustee did, to use their License 372 easement areas and premises to access the A.2 Assets it acquired from the Trustee, they would buy an agreement with DHHL to terminate License 372 and grant HTI a license to the same easement areas and premises.

38. HTI then started trespassing in Plaintiff's License 372 easement areas and premises related to the Paniolo Network and other HHL areas and thereby using and damaging Plaintiffs' property. DHHL intentionally wrongfully allowed HTI do so.

39. Plaintiffs also have already lost income from DHHL not enforcing License 372 by allowing HTI to provide service to customers on HHL by building telecommunications infrastructure without a license to avoid paying to use the License 372 infrasturcture. HTI is cherry picking the profitable customers on HHL. Examples of this are the middle school in Kapolei adjacent to the KROC Center and KaWaihona Charter School in Nanakuli. In comparison Charter resisted DHHL's requests to violate 372 and entered into an agreement to use Plaintiff's License 372 easement areas and premises as noted DHHL's memo to HHC dated January 18, 2022.

---

[11] In addition, the Trustee and HTI clearly did not obtain any non-A-2 SIC assets nor any portion of Waimana's interest in License 372 that was not assigned to SIC in the Partial Assignment, which is Waimana's right to provide (post FCC Order non-exclusive) telecommunications services other than voice only service on HHL and Plaintiffs' License 372 Easement areas.

14

40. Moreover, if HTI: (a) obtains a new telecommunications license from DHHL, (b) obtains a non-license right to use HHL for telecommunications from DHHL, or (c) DHHL simply allows or does not prevent HTI from using HHL for telecommunications, any such use of HHL cannot be in the same easement areas and premises already granted to Plaintiffs in License 372 as that would constitute a breach of License 372 and a breach of fiduciary duty by Defendants.

41. On August 31, 2021, the APA sale to HTI closed.

42. Plaintiffs are not aware whether DHHL has granted HTI any right to provide telecommunications services on HHL, and if DHHL is contemplating doing so, DHHL would breach fiduciary duties to its homesteaders if that license does not include the same strict obligations that Waimana assumed in License 372 including paragraphs 6-9 of License 372.

43. DHHL would also breach fiduciary duties owed to Plaintiffs if it allowed use of the same easement areas licensed to Plaintiffs who are native Hawaiian corporations and a limited liability company as acknowledged in License 372, the Pa Makani Partial Assignment and the Clearcom Partial Assignment.

44. DHHL may argue that the Federal Communications Commission ("FCC") order dated July 3, 2017 ("**FCC Order**"), attached hereto as **Exhibit "H,"** allows DHHL to provide access to the License 372 Easement on the grounds that the FCC Order prohibits DHHL from granting an exclusive license to only one company to provide telecommunications services on HHL, i.e. the License 372 Service Right. However, the order does not require Plaintiffs to share use of their License 372 Easement. The FCC Order only preempts the portion of the License that:

> grants one entity the "exclusive" right "to build, construct, repair, maintain and operate a . . . telecommunications network" for the

15

U.S. Bankruptcy Court - Hawaii    #18-01319    Dkt # 772-1    Filed 07/25/22    Page 15 of 20

purpose of providing service to the residents of the Hawaiian home lands and therefore prohibits other entities from doing so.

Id. at Page 7, Paragraph 16.

45. DHHL also breached duties owed to Plaintiffs by petitioning the FCC to terminate the exclusive service right in License 372 without knowledge or consultation which effectively withdrew the rural company exception to Plaintiffs detriment. SIC's June 13, 2020 letter explained that: "When DHHL requested the FCC nullify the exclusive provision of the License, DHHL knowingly violated the fundamental provision for issuing the License. Your violation has made it impossible for SIC to 'Obtain necessary funds needed to construct and operate the necessary telecommunications."

46. Nonetheless, under the severability provision of the License 372 at paragraph 22, while the exclusive aspect of License 372 Service Right may have been invalidated by the FCC Order, the order did not invalidate, and FCC does not have jurisdiction to invalidate Plaintiffs' License 372 Easement or invalidate the non-exclusive License 372 Service Right. The FCC order is similar to other orders which forced municipalities to allow other carriers to provide service but not infringe on the existing rights to control easements and rights-of-ways. Plaintiffs require exclusive possession to perform their telecommunications obligations required under License 372. Thus, Plaintiffs' right to exclusive possession of their License 372 Easement areas survived the FCC Order, as did their rights and obligations to provide non-voice telecommunications services on HHL. An internal DHHL memo to the HHC dated January 18, 2022, a copy of which is attached hereto as **Exhibit "I",** states "DHHL has informed its lessees, tenants, and permittees that under Federal law they may obtain broadband telecommunications services from any provider of their choice"; confirming that the FCC Order dealt with License 372 Service Right.

47. DHHL also breached duties owed to Plaintiffs by revoking DHHL's issued Eligible Telecommunications Carrier ("**ETC**") certifications that had allowed Plaintiffs to obtain support payments from funds administered by the FCC and transferring DHHL's authority to issue ETC's to the PUC thereby giving up HHCA Section 206 jurisdiction to the detriment of Plaintiffs and other native Hawaiian utility companies.

48. The only area qualified to receive support payments in Hawaii is HHL thus by transferring DHHL's authority to issue ETC's to the PUC, DHHL gave up HHCA Section 206 jurisdiction to the detriment of Plaintiffs and other native Hawaiian companies that are eligible to receive funds for providing services to residents on HHL.

49. Oceanic Communications, now Charter Communications, has an agreement to provide high speed data (internet) and video (cable TV) to HHL with Clearcom.

50. Without notice to Plaintiffs, DHHL initiated at least one meeting with Charter to find out if Charter's agreement to use License 372 assets could be used by others to circumvent License 372.

## COUNT I – BREACH OF CONTRACT

51. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 49 hereinabove.

52. The elements of breach of contract are: (1) a contract, (2) the plaintiff's performance or excuse for nonperformance, (3) the defendant's breach, and (4) the resulting damages to plaintiff. 17B C.J.S. Contracts § 830, Westlaw (database updated October 2021). Haw. State Fed. Credit Union v. Kahapea, 150 Hawaiʻi 155 n.7, 497 P.3d 1103 (App. 2021)

53. Here, (1) License 372, the SIC assignment, the Pa Makani Partial Assignment and the Clearcom Partial Assignment are contracts; (2) Plaintiffs have performed under these

17

contracts or their non-performance has been excused; (3) DHHL breached these contract by (a) entering into the Limited Right-of Entry to SIC's License 372 easement areas and premises identified therein, (b) allowing HTI to enter into Plaintiffs' easement areas and premises including areas not related to SIC's A-2 Assets, (c) allowing HTI to carry non-voice telecommunications via the A-2 Assets, making erroneous filings in the Bankruptcy Court, potentially negotiating a new license with HTI that violates Plaintiffs rights under License 372 and Partial Assignments to SIC, Pa Makani and Clearcom, causing the FCC Order and terminating Plaintiffs ETC and then transferring ETC jurisdiction for HHL to the PUC; and (4) said breaches have harmed Plaintiffs in amounts to be determined at trial.

COUNT II – BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

54. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 52 hereinabove.

55. The covenant of good faith and fair dealing is implied in the License 372 and Partial Assignments to Pa Makani and Clearcom where DHHL is obligated to be faithful to an agreed common purpose and consistently with the justified expectations of Plaintiffs. <u>Clark Realty Corp. v. Henry F. Akona Tr.</u>, 142 Hawaiʻi 486, 421 P.3d 694 (App. 2018).

56. Here, Plaintiffs entered into License 372 and partial assignments in perpetuity to provide telecommunications services to HHL beneficiaries based on the promise that the easements were exclusive to areas they developed and used to provide said services.

57. DHHL breached this covenant and continue to do so to the detriment of Plaintiffs and all native Hawaiians in amounts to be determined at trial

18

U.S. Bankruptcy Court - Hawaii    #18-01319    Dkt # 772-1    Filed 07/25/22    Page 18 of 20

## COUNT III – BREACH OF FIDUCIARY DUTIES

58. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 56 hereinabove

59. Defendants owed trust fiduciary duties to Plaintiffs as native Hawaiian corporations and a limited liability company.

60. Defendants breach those fiduciary duties as noted in paragraph 52(c), all of which impairs Plaintiffs right and obligation to provide benefits to HHL beneficiaries set forth in License 372.

61. Said breach caused harm to Plaintiffs and all HHL beneficiaries in amounts to be determined at trial.

## COUNT IV – DECLARATORY RELIEF

62. Plaintiffs incorporate by reference the allegations contained in paragraphs 1 through 60 hereinabove.

63. Plaintiffs are entitled to a declaratory relief determination that the SIC Partial Assignment only provided SIC with the right to provide voice only service on HHL and no other telecommunications services on or off of HHL, including wireless that was assigned to Pa Makani and broadband that was assigned to Clearcom.

64. Plaintiffs are entitled to a declaratory relief determination that the SIC Partial Assignment did not provide to SIC the License 372 exclusive use of easement areas and premises and that those uses remain with Waimana.

65. Plaintiffs are entitled to a declaratory relief determination that License 372 grants Plaintiffs' exclusive possession of easement areas and premises of HHL that they developed subject to DHHL's reserved rights set forth in License 372.

WHEREFORE, Plaintiffs prays the Court grant the following relief:

1. For damages in an amount to be determined at trial.

2. Declaratory relief set forth in Count IV.

3. Injunctive relief;

4. For plaintiffs' reasonable costs and attorneys' fees incurred herein.

5. For such other and further relief as the Court deems just.

DATED: Honolulu, Hawai'i, July 19, 2022.

                                          */s/ William Meheula*
                                          WILLIAM MEHEULA
                                          D. KAENA HOROWITZ
                                          Attorneys for Plaintiff
                                          WAIMANA ENTERPRISES INC., SANDWICH ISLES COMMUNICATIONS, INC., PA MAKANI LLC, and CLEARCOM, INC.